# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

---

NORTHERN STATES POWER
COMPANY, a Wisconsin corporation,

                    Plaintiff,

v.

THE CITY OF ASHLAND, WISCONSIN;
SOO LINE RAILROAD COMPANY; and
WISCONSIN CENTRAL, LTD.,

                    Defendants.

Case No. 12-cv-602

**DEFENDANT SOO LINE RAILROAD
COMPANY'S AND WISCONSIN
CENTRAL, LTD.'S MEMORANDUM
IN SUPPORT OF JOINT MOTION TO
DISMISS**

---

Plaintiff Northern States Power Company (NSP) commenced this action seeking cost recovery and contribution under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), and asserting claims for negligence, nuisance, and contribution under Wisconsin common law, for cleanup costs associated with the Ashland/Northern States Power Lakefront Superfund Site in Ashland, Wisconsin. Defendants Soo Line Railroad Company and Wisconsin Central Limited jointly move to dismiss NSP's common law and CERCLA § 107 claims because:

- Under well-established law in the Seventh Circuit and other jurisdictions, NSP's common law claims fail because they are federally preempted by CERCLA.

- NSP's CERCLA § 107 claim fails because NSP's exclusive remedy to recover the response costs it has identified is under CERCLA § 113(f), 42 U.S.C. § 9613.

Soo Line and Wisconsin Central respectfully request that this Court dismiss NSP's

9210687v1

common law and CERCLA § 107 claims—Counts I and IV through VIII—with prejudice.[1]

## NSP'S FACTUAL ALLEGATIONS[2]

This action concerns NSP's response costs and damages associated with the Ashland Site, which was placed on the National Priorities List by the U.S. Environmental Protection Agency (EPA) in September 2002. (Compl. ¶ 25.) The Ashland Site consists of approximately forty acres of property in and along the shore of the Chequamegon Bay of Lake Superior, and has been divided into four areas of concern by the EPA: (1) Chequamegon Bay, (2) the soils and shallow groundwater of Kreher Park, (3) the soils and shallow groundwater of the Upper Bluff/Filled Ravine, and (4) the deep groundwater of the Copper Falls Aquifer. (Compl. ¶¶ 2-3.) For the Court's convenience, a map identifying the locations of these areas within the Ashland Site, included as Exhibit 1 to NSP's Complaint, is attached to the accompanying Declaration of Andrew W. Davis.

---

[1] Soo Line and Wisconsin Central are not filing answers at this time as to those portions of NSP's Complaint on which they are not moving to dismiss, in reliance on the majority rule followed in courts of the Seventh Circuit that a partial motion to dismiss enlarges the time to answer. *See, e.g., Porter v. U.S. Dept. of Army*, 1995 WL 461898 (N.D. Ill. 1995), *aff'd*, 99 F.3d 1142 (7th Cir. 1996); *Brocksopp Eng'g, Inc. v. Bach-Simpson Ltd.*, 136 F.R.D. 485, 486 (E.D. Wis. 1991). If, however, the Court deems that answers are necessary before a ruling on the motion to dismiss, Soo Line and Wisconsin Central will promptly comply and file their answers. In any event, Soo Line and Wisconsin Central deny all allegations asserted against them that are not specifically subject to this motion.

[2] This summary is of facts alleged in NSP's Complaint. While Soo Line and Wisconsin Central do not agree that all alleged facts are true and complete, they accept the allegations for purposes of this motion only.

Plaintiff NSP owns property that is part of the Ashland Site.  (Compl. ¶ 3.)  A manufactured gas plant, or MGP, was located on NSP's property, and was operational from approximately 1885 until 1947.  (*Id.*)  The MGP produced gas used for heating and lighting in the City of Ashland.  (*See* Administrative Order on Consent (AOC) at 5, signed by NSP on November 6, 2003 and attached at Exhibit 2 of NSP's Complaint.) The MGP manufacturing processes resulted in the release of wastes containing hazardous substances at the Ashland Site.  (*Id.*)  The MGP was located on the Upper Bluffs/Filled Ravine area of the Ashland Site.  (Compl. ¶ 3.)  Historical maps of the Site show that the ravine near the MGP was open at the start of the MGP operations in the late 1880s, but by the early 1900s had been filled.  (AOC, at 5.)  NSP acquired the property on which the MGP was located in 1986 from a former public utility, Lake Superior District Power Company.  (Compl. ¶ 3.)

The Kreher Park portion of the Ashland Site consists of approximately 13 acres of reclaimed former lakebed, located northwest of the Upper Bluff/Filled Ravine.  (Compl. ¶ 27.)  From approximately 1901 through 1939, Schroeder Lumber owned and operated a lumber mill on a portion of Kreher Park.  (Compl. ¶¶ 28, 37-38.)  NSP alleges that Schroeder Lumber's operations resulted in the release of contaminants of concern (COCs) that caused or contributed to contamination at the Ashland Site.  (Compl. ¶¶ 37-45.)  Schroeder Lumber no longer exists and no successor to Schroeder has yet been identified.  (Compl. ¶ 45.)

In 1942, the City purchased the Schroeder Lumber property, and constructed and operated a wastewater treatment plant on the Kreher Park portion of the Site from

approximately 1951 through 1992. (Compl. ¶¶ 46, 57.) NSP alleges that the City's activities on Kreher Park, including waste disposal, landfill operations, sewage and wastewater discharges, and construction and excavation activities, caused, contributed to and exacerbated the contamination of the Ashland Site, including the mobilization of COCs in Kreher Park to Chequamegon Bay. (Compl. ¶¶ 46-70.)

NSP alleges that Soo Line and its predecessors owned portions of Kreher Park for use as a railroad right-of-way from the early 1870s through 1987. (Compl. ¶ 71.) According to NSP, Soo Line serviced the Schroeder Lumber facility, the former MGP, and a former commercial dock, engaging in "activities such as loading, off-loading and transporting COCs, including wood treatment materials, tars, oils and petroleum products." (Compl. ¶ 72.) NSP alleges that Soo Line's activities "resulted, caused, contributed to and/or exacerbated the contamination [of] the Ashland Facility."[3] (Id.) NSP also alleges that Soo Line and/or its predecessors "dumped COC-containing substances such as tars and oils and other materials along the railroad tracks and shoreline in Kreher Park," which NSP asserts further caused or contributed to contamination of the Ashland Facility. (Compl. ¶ 73.) NSP alleges that in or about October 1987, Wisconsin Central purchased Soo Line's property at the Ashland Site. (Compl. ¶¶ 74-76.)

NSP alleges that these activities on Kreher Park (as described above with respect to the railroads individually) give rise to liability for both railroads under CERCLA

---

[3] NSP uses the term "Ashland Facility" to refer in particular to the Chequamegon Bay and Kreher Park portions of the Ashland Site (Compl. ¶ 2).

§§ 107(a) and 113(f).[4]  (Compl. ¶¶ 96-108, 121-33.)  NSP further alleges that these exact same activities also give rise to liability against Soo Line and Wisconsin Central under Wisconsin common law theories, including negligence, creation and maintenance of a public nuisance (as to Soo Line only), and common law contribution.  (*See* Compl. ¶¶ 152-74.)

NSP and the EPA entered into the AOC on November 16, 2003, under which NSP agreed to perform a Remedial Investigation and Feasibility Study (RI/FS) to determine, *inter alia*, the nature and extent of contamination at the Ashland Site and to evaluate various alternatives for remedial action at the Site.  (Compl. ¶ 6.)  The AOC required NSP to undertake a remedial investigation as to the entirety of the Ashland Site, including the Upper Bluff/Filled Ravine, Kreher Park, and Chequamegon Bay.  (AOC, Ex. 2, at 2-6.)  NSP completed the RI/FS in 2008, and on September 30, 2010, the EPA issued a Record of Decision (ROD) on the remedial action to be conducted at the Ashland Site.  (Compl. ¶¶ 6-7.)

NSP and the EPA have entered into a Consent Decree, lodged with this Court on August 8, 2012, and approved by the Court on October 19, 2012, pursuant to which NSP agreed to perform a cleanup, referred to as a "remedial design and remedial action" under the nomenclature of CERCLA, with respect to the on-land portions of the Ashland Site.[5]

---

[4] For ease of reference, the railroads refer to the relevant provisions of CERCLA by their statutory section number rather than their United States Code section number under 42 U.S.C. § 9601 *et seq.*

[5] *See* Order Approving Consent Decree, *United States v. Northern States Power*

(Compl. ¶ 8.)  NSP alleges that it has incurred, and will continue to incur, substantial costs related to its clean-up activities on the Ashland Site, which NSP further contends are in fulfillment of the 2012 Consent Decree and are necessary and consistent with the National Contingency Plan.  (Compl. ¶ 79.)

Additionally, NSP alleges that although the 2012 Consent Decree does not specifically address the Chequamegon Bay portion of the Ashland Site, NSP "has incurred and may incur additional response costs at the Chequamegon Bay portion of the Ashland Site."  NSP seeks a declaratory judgment from the Court under CERCLA § 113(g) regarding each Defendants' purported liability and apportionment of costs incurred and to be incurred in remediating Chequamegon Bay.  (Compl. ¶¶ 83, 144-51.)

## ARGUMENT

### I.   STANDARD OF REVIEW FOR A MOTION TO DISMISS UNDER RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff has alleged enough factual content to create a reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  "[T]o survive a motion to dismiss in a complex case, a complaint must sufficiently plead allegations to allow a judgment that the claim has the possible merit that justifies the time and expense required in

---

*Co.*, Case No. 12-cv-565 (W.D. Wis. Oct. 18, 2012) (Docket No. 11).

litigating the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) (citing *Stark Trading v. Falcon-bridge Ltd.*, 552 F.3d 568, 574 (7th Cir. 2009)).

## II.    NSP'S COMMON LAW CLAIMS ARE PREEMPTED BY CERCLA.

In addition to its claims for cost recovery and contribution under CERCLA, NSP has asserted a number of claims against Soo Line that arise under Wisconsin common law, including claims for negligence (Count IV), for creation and maintenance of a public nuisance (Counts V and VI), and for common law contribution (Count VIII).  NSP has alleged similar claims against Wisconsin Central for negligence (Count VII) and for contribution (Count VIII).   Because these common law claims seek costs that are recoverable within the CERCLA framework, they are preempted.

### A.    CERCLA Preempts Common Law Claims Seeking Costs Or Damages That Fall Within CERCLA's Comprehensive Scheme.

The preemption doctrine is founded in the Supremacy Clause of the United States Constitution, which provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2; *Cipollone v. Liggett*, 505 U.S. 504, 516 (1992).  State laws that conflict with federal law are therefore without effect.  *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).  Federal law can preempt state law in three different ways: (1) by express preemption, where federal law explicitly states that it overrides state or local law, (2) by "field preemption," in which federal law "so thoroughly occupies a legislative field as to make it reasonable to infer that Congress left no room for the states to act," or (3) by conflict preemption, which exists "if it would be impossible for a party to comply with both local and federal requirements or where local law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008) (internal quotations

omitted).

Federal courts have held that the basis for preemption of state law under CERCLA is conflict preemption. *See, e.g., Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.,* 596 F.3d 112, 138 (2d Cir. 2010); *PMC, Inc. v. Sherwin-Williams Co.,* 151 F.3d 610, 617-18 (7th Cir. 1998); *In re Reading Co.,* 115 F.3d 1111, 1117 (3d Cir. 1997), *abrogated on other grounds, E.I. DuPont De Nemours & Co. v. United States,* 460 F.3d 515 (3d Cir. 2006), *vacated,* 551 U.S. 1129, 1129 (2007).

CERCLA provides a comprehensive statutory framework for the recovery of response costs and damages, such as those alleged in NSP's Complaint, as "part of an elaborate settlement scheme aimed at the efficient resolution of environmental disputes." *In re Reading Co.,* 115 F.3d at 1117. "CERCLA's principle aims are to effectuate the cleanup of hazardous waste sites and impose cleanup costs on responsible parties." *New Mexico v. Gen. Elec. Co.,* 467 F.3d 1223, 1244 (10th Cir. 2006). Thus, federal courts have held that a variety of state common law claims that seek to recover costs or damages already recoverable within the CERCLA framework interfere with CERCLA and are preempted. "Permitting independent common law remedies would create a path around the statutory settlement scheme, raising an obstacle to the intent of Congress." *In re Reading,* 115 F.3d at 1117.

Numerous courts have held that common law claims asserted by a potentially responsible party (PRP)[6] under CERCLA, including claims for negligence, nuisance, contribution, restitution, and unjust enrichment, are preempted by CERCLA, if those claims seek damages that are already subject to, and would be apportioned by, the

---

[6] CERCLA defines various categories of potentially responsible parties, or PRPs, that may be liable under the terms of the law. *See* CERCLA § 107(a)(1)-(4); *DICO, Inc. v. Amoco Oil Co.,* 340 F.3d 525, 529 (8th Cir. 2003) (noting that CERCLA § 107(a) defines the categories of PRPs).

CERCLA statutory framework. *See, e.g., Niagara Mohawk*, 596 F.3d at 138 (finding common law claim for contribution preempted because it sought apportionment for the same costs that were subject to apportionment under CERCLA); *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 617-18 (7th Cir. 1998) (action for contribution under Illinois statute was preempted by CERCLA); *Gen. Elec. Co.*, 467 F.3d at 1248 (holding state law natural resource damages claims preempted by CERCLA); *Ashtabula River Group II v. Conrail, Inc.*, 549 F. Supp. 2d 981, 985-86 (N.D. Ohio 2008) (holding that plaintiff's public nuisance claims were preempted by CERCLA § 107(a), and stating when "CERCLA and state law claims seek recovery of the same response costs, courts have found that CERCLA preempts the plaintiff's right to recover under the state law").

Indeed, on October 4, 2012, the Eastern District of Wisconsin addressed whether CERCLA preempts precisely the same Wisconsin common law claims that NSP has asserted against Soo Line and Wisconsin Central in this action. *Appleton Papers v. George A. Whiting Paper Co.*, No 08-cv-16, 2012 WL 4748611, at **2-3 (E.D. Wis. Oct. 4, 2012). There, several PRP-defendants asserted counterclaims against PRP-plaintiffs Appleton Papers and NCR Corporation for contribution, negligence, creation of a public nuisance, and maintenance of a public nuisance. *Id.* at *1. Relying on Seventh Circuit precedent, the court determined that allowing PRPs to recover costs subject to CERCLA's liability scheme, under differing liability schemes of state common law, would conflict with federal law.

> One important factor that courts may consider is the genesis of the outlays that are sought to be recovered. *If the funds were expended pursuant to CERCLA, and if CERCLA itself provides a scheme for reapportioning those funds*, then allowing a state law claim to essentially re-apportion those funds in a way CERCLA did not intend would pose a conflict. Thus, cases involving state law claims for contribution, such as *PMC*, find a conflict rather easily and bar the state law claims.

*Id.* (emphasis added). In addition, the court concluded that allowing PRPs to recover

costs that they incur *because of* CERCLA but that are not recoverable under CERCLA, would also conflict with federal law. The court noted that "[a]llowing them to recover costs that CERCLA denied—costs that arise *because of* CERCLA—would certainly undermine CERCLA." *Id.*

The court in *Appleton Papers* went on to reject the PRP-defendants' argument that their claims for negligence and nuisance were "independently viable" and thus not preempted. The key question was "whether the state law claims—even if they are not 'contribution' claims as such—would effectively reapportion costs incurred under CERCLA in a fashion that CERCLA itself would not countenance." *Id.* at *2. The court concluded that because the claims for negligence and nuisance sought the same costs that arose under CERCLA and were subject to reallocation under CERCLA, they were preempted by CERCLA. "This is true whether the claims are described as torts, nuisance, or contribution claims." *Id.* Accordingly, the court granted Appleton Papers' motion for summary judgment on preemption grounds and dismissed the PRP-defendants' Wisconsin law counterclaims.

The court's decision in *Appleton Papers* relied on, and is fully consistent with, the federal appellate decisions in *PMC*, from the Seventh Circuit in 2008, and *Niagara Mohawk*, in which the Second Circuit in 2010 expressly agreed with *PMC* as well as decisions from the Third, Fifth, and Ninth Circuit Courts of Appeals. In *PMC, Inc. v. Sherwin-Williams Co.*, a PRP failed to submit its proposed clean-up method for public comment pursuant to requirements of the National Contingency Plan ("NCP"). 151 F.3d at 616. Because compliance with the NCP is a condition for cost recovery and contribution under CERCLA § 113(f), the district court found that PMC could not obtain CERCLA contribution for clean-up costs already incurred, but nonetheless allowed PMC to seek contribution under state law. *Id.* at 616-17. The Seventh Circuit reversed, holding that to allow a PRP to recover such costs under state law would circumvent and conflict with the statutory requirements for cost recovery and contribution under

CERCLA. *Id.* at 618 ("PMC's invocation of Illinois' contribution statute is an attempt to nullify the sanction that Congress imposed for the kind of CERCLA violation that PMC committed.").

The Second Circuit relied on similar reasoning in *Niagara Mohawk*, affirming the district court's dismissal of a PRP's common law claims for contribution, indemnification, and unjust enrichment as preempted by the PRP's parallel claims for cost recovery and contribution under CERCLA. 596 N.W. at 138-39. The court explained that:

> NiMo [Niagara Mohawk] makes no claims for cleanup costs outside of those it expended in compliance with the Consent Order and we have already determined that costs incurred pursuant to the Consent Order, as amended, fall within CERCLA. Because NiMo did not incur costs outside of CERCLA, NiMo has no grounds for contribution under New York law and we affirm the district court.

*Id.* at 139. The court went on to hold that the PRP's claims for common law contribution, indemnification, and unjust enrichment were all preempted because the damages sought resulted from CERCLA itself. *See id.*

In short, under established federal law, CERCLA preempts all common law claims that seek to recover response costs or damages that arise under CERCLA, regardless of whether or not they are recoverable under CERCLA's apportionment scheme. As discussed below, NSP's Wisconsin common law claims seek just such recovery and are therefore preempted.

**B.     NSP's Wisconsin Common Law Claims Are Preempted Because They Seek Costs And Damages That Fall Within CERCLA's Comprehensive Scheme For Cost Recovery and Apportionment.**

The *Appleton Papers* decision, and the federal appellate decisions referenced above, including the Seventh Circuit's decision in *PMC*, squarely foreclose NSP's claims

for contribution, negligence, and public nuisance asserted against the Railroads. The limited conduct alleged by NSP against Soo Line as a basis for CERCLA liability is that (1) Soo Line and/or its predecessors owned and operated on portions of Kreher Park; (2) Soo Line and/or its predecessors engaged in activities such as "loading, off-loading and transporting materials containing COCs, including wood treatment materials, tars, oils and petroleum products, and engaged in or authorized dredging activities in or near the Ashland Facility,' which activities and operations "resulted, caused, contributed to and/or exacerbated the contamination at the Ashland Facility," and (3) upon information and belief, Soo Line and/or its predecessors "dumped COC-containing substances such as tars and oils and other materials along the railroad tracks and shoreline at Kreher Park," and that such activities "caused, contributed to and/or exacerbated the contamination of the Ashland Facility." (Compl. ¶¶ 71-73.) As to Wisconsin Central, NSP alleges merely that, upon information and belief, it is a "successor to relevant liabilities of Soo Line arising out of the ownership and operation of the railroad corridor, and related facilities, within the Ashland Facility." (Compl. ¶ 76.)

NSP's limited allegations against Soo Line and Wisconsin Central in support of its common law claims rely on precisely the same conduct, and seek recovery of the same costs and damages, as its CERCLA claims described in the paragraph above. To support its claim for negligence, for example, NSP alleges that "Soo Line and/or its predecessors' railroad activities, including careless loading and transport operations, resulted in spills, and caused, contributed to and/or exacerbated the contamination of the Ashland Facility"; that Soo Line "failed to exercise due care by dumping COC-containing substances such as tars and oils and other materials along the railroad tracks and shoreline in Kreher Park"; and that Soo Line's activities "caused, contributed to and/or exacerbated the contamination of the Ashland Facility." (Compl. ¶¶ 153-56.) NSP alleges that as a result, it has "incurred costs and damages" for which Soo Line is liable to NSP. (Compl. ¶ 158.) NSP's allegations against Soo Line and Wisconsin Central for nuisance,

12

negligence, and contribution allege identical conduct and seek the same damages as NSP's claims for cost recovery and contribution under CERCLA §§ 107(a) and 113(f). (*See* Compl. ¶¶ 159-174.)   In addition, all costs sought by NSP are alleged to be consistent with the National Contingency Plan, and are thus recoverable within the CERCLA framework. (Compl. ¶ 79, 81.)

Because NSP's claims under Wisconsin common law seek the same costs and damages that it seeks by way of the exclusive remedies for cost recovery and apportionment under CERCLA, its claims are preempted. *See Niagara Mohawk*, 596 N.W. at 138-39 (finding common law claims preempted because they sought costs and damages that resulted from CERCLA itself); *Ashtabula River Corp. Group II v. Conrail, Inc.*, 549 F. Supp. 2d 981, 985-86 (N.D. Ohio 2008) ("Where, however, a plaintiff's CERCLA and state law claims seek recovery of the same response costs, courts have found that CERCLA preempts the plaintiff's right to recover under the state law.  As plaintiff herein is seeking the same damages under § 107 of CERCLA as it is under the state law claims, these claims are subject to dismissal."). As in *Appleton Papers*, NSP's common law claims seek costs that are already subject to recovery and/or apportionment under CERCLA's statutory framework. 2012 WL 4748611, at **1-2.  Moreover, NSP has not claimed any costs or damages other than response costs and damages that are subject to CERCLA's statutory framework.

Further,  to the extent NSP asserts that its common law claims seek to recover and apportion response costs *not otherwise* recoverable under CERCLA, those claims would attempt to achieve through Wisconsin common law what cannot be accomplished under CERCLA.  The Seventh Circuit in *PMC* held that such a result would squarely conflict with CERCLA, preempting those common law claims.   151 F.3d at 618; *see also Appleton Papers*, 2012 WL 4748611, at **1-2.

Ultimately, NSP's common law claims seek to avoid—and therefore would disrupt—the "elaborate settlement scheme aimed at the efficient resolution of

environmental disputes." *In re Reading Co.*, 115 F.3d at 1117. Thus, NSP's claims against the railroads for common law negligence, creation and maintenance of a public nuisance, and contribution are preempted and should be dismissed with prejudice.

## III.   NSP'S COST RECOVERY CLAIM UNDER CERCLA § 107(a) IS BARRED BY ITS EXCLUSIVE REMEDY UNDER CERCLA § 113(f).

NSP's cost recovery claim under CERCLA § 107(a) also fails to state a claim upon which relief can be granted because contribution under CERCLA § 113(f) is NSP's exclusive remedy for its alleged response costs. Therefore, NSP's claim under CERCLA § 107(a) must be dismissed.

### A.   A PRP Eligible To Recover Response Costs Under CERCLA § 113(f) Is Barred From Seeking Recovery Under § 107(a).

When a PRP incurs costs investigating or cleaning up a contaminated site, CERCLA §§ 107 and 113 "provide two 'clearly distinct' remedies" for the recovery of those response costs. *United States v. Atlantic Research Corp.*, 551 U.S. 128, 138 (2007). CERCLA § 107(a) provides for recovery of response costs from persons liable under the criteria of § 107(a)(1)-(4). CERCLA § 113(f) provides that any person who has been subject to a civil action under CERCLA § 106 or § 107, or that has resolved its liability to the United States or a State "for some or all of a response action or for some or all of the costs of such action" in an administrative or judicially approved settlement, may seek contribution from any other person who may be liable under CERCLA § 107(a) and is not party to such a settlement. CERCLA § 113(f)(1), (f)(3)(B). In *Atlantic Research*, the Court held that a PRP that had not been subject to a civil action (and thus could not

14

bring an action under CERCLA § 113), but had voluntarily incurred remediation costs, could recover under CERCLA § 107. 551 U.S. at 138-39. The Supreme Court, however, noted that the two remedies under CERCLA §§ 107 and 113 complement each other, but are to be used "in different procedural circumstances" and are not available as alternative remedies. *Id.* at 139 (internal quotations omitted).

Importantly, under Seventh Circuit law, recovery under CERCLA § 107 is unavailable where, as here, a claim for contribution can be asserted under CERCLA § 113. *See Appleton Papers, Inc. v. George A. Whiting Paper Co.*, 572 F. Supp. 2d 1034, 1043 (E.D. Wis. 2008) ("In cases where a claim for contribution can be asserted under § 113(f), § 107(a) cannot be used.") (applying *Metro. Water Reclamation Dist. of Greater Chicago v. N. Am. Galvanizing & Coatings, Inc.*, 473 F.3d 824, 836 (7th Cir. 2007)). PRPs eligible to recover response costs from other PRPs through contribution under CERCLA § 113(f) *must* recover those costs, if at all, under § 113(f). *Metro. Water Reclamation Dist.*, 473 F.3d at 836 (reaffirming earlier jurisprudence that "a claim 'by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make *must* be brought under § 113(f)(1)'") (emphasis added) (quoting *Azko Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761 (7th Cir. 1994)); *see also Appleton Papers*, 572 F. Supp. 2d at 1042-44; *cf. Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 603 (8th Cir. 2011), *cert denied* 132 S. Ct. 244 (2011) (holding "[CERCLA] § 113(f) provides the exclusive remedy for a liable party compelled to incur response costs"); *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204, 227-29 (3d Cir. 2010) (holding that PRPs "who if permitted to bring a [CERCLA] § 107(a) claim

15

would be shielded from contribution counterclaims [as a result of entering into a settlement with the United States or a State], do not have any § 107(a) claims for costs incurred pursuant to consent decrees in a CERCLA suit"); *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 127-128 (2d Cir. 2010) ("To allow [a PRP who settled its CERCLA liability] to proceed under § 107(a) would in effect . . . abrogate the requirements Congress placed on contribution claims under [CERCLA] § 113"). Thus, in the Seventh Circuit, consistent with holdings in other circuit courts, a contribution claim under CERCLA § 113(f) is the *exclusive* remedy under CERCLA for a PRP who is eligible to recover response costs under § 113(f).

### B. NSP Is Eligible To Seek Recovery Of Response Costs Under CERCLA § 113(f) And Is Thus Barred From Seeking Recovery Under § 107(a).

Under the allegations in its Complaint, NSP meets the criteria for bringing a claim for contribution under CERCLA § 113(f) for all of its response costs at the Ashland Site (subject, of course, to meeting its burden of proof and overcoming defendants' affirmative defenses).[7]  NSP is thus barred from simultaneously seeking such recovery

---

[7] The fact that the railroads believe they are not liable in contribution to NSP does not alter the analysis here; the pertinent question is solely whether NSP meets the criteria for asserting a CERCLA § 113(f) claim. Because NSP can meet those § 113(f) criteria, it cannot simultaneously seek § 107(a) recovery under the established law. The railroads will deny any contribution liability to NSP in their answers on several bases, including, among others, the contiguous property owner defense under CERCLA § 107(q), available to persons who own real property that became contaminated solely by virtue of being located contiguous to contaminated property not owned by such persons, and the third-party defense under CERCLA § 107(b)(3), which protects innocent landowners from liability for releases caused by others.

under § 107(a).

First, NSP's status with respect to the Ashland Site satisfies the prerequisites for it to seek contribution under CERCLA § 113(f): it has entered into an administrative settlement with the EPA (the AOC) under which it completed an RI/FS for the Ashland Site; it has been subject to a civil enforcement action under CERCLA §§ 106 and 107(a) by the EPA with respect to the Ashland Site; and it has entered into a judicially approved settlement with the United States and the State of Wisconsin (the Consent Decree), under which it has agreed to complete a remedial action for a large portion of the Ashland Site. Therefore, it is eligible to seek to recover its response costs incurred at the Ashland Site in contribution under CERCLA § 113(f) and is barred from seeking recovery under § 107(a). Significantly, in apparent anticipation of this point in the enforcement action against NSP before this Court, the United States stated in its motion to enter the Consent Decree that it "does not necessarily agree that NSP[] is entitled to pursue claims in its contribution case under CERCLA Section 107 in addition to its claims for contribution under Section 113." (Plaintiffs' Joint Brief in Support of Motion to Enter Consent Decree, Case No. 12-cv-565 (W.D. Wis. Oct. 15, 2002) (Docket No. 9, at p. 10, n. 3.)) (citing *Appleton Papers Inc..*, 572 F. Supp. 2d 1034).[8]

---

[8] A true and correct copy of the United States' Joint Brief is attached at Exhibit B to the accompanying Davis Declaration. This Court can take judicial notice of court records filed in other proceedings for purposes of the Railroads' motion. *Gen. Elec. Capital v. Lease Resolution*, 128 F.3d 1074, 1081-82 (7th Cir. 1997) (discussing cases allowing judicial notice of court records and pleadings).

Second, the exclusivity of CERCLA § 113(f) is not limited merely because NSP has not yet fully settled its liability for the entire Ashland Site. Rather, CERCLA § 113(f) provides that NSP can seek contribution "during or following *any* civil action under section 9606 of this title or under section 9607(a) of this title," and that "[a] person who has resolved its liability to the United States or a State for *some* or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution." (emphasis added). Because NSP has been sued by the EPA, and has settled some of its liability, its exclusive remedy under the plain language of CERCLA § 113 sounds in contribution. *See Appleton Papers, Inc.*, 572 F. Supp. 2d at 1043.

Indeed, NSP has not alleged that it has incurred, or will incur, any costs under its CERCLA § 107(a) claim that are not recoverable under its contribution claim under CERCLA § 113(f). All of NSP's costs investigating the Ashland Site under the direction of the Wisconsin Department of Natural Resources (Compl. ¶¶ 31-32, 77-78), performing the RI/FS under the AOC issued in 2003 (Compl. ¶¶ 33-34, 81), and cleaning up the site under the Consent Decree (Compl. ¶¶ 35-36, 79-80) are "response costs" under CERCLA[9] that are recoverable in contribution under § 113(f), to the extent NSP can meet

---

[9] *See* CERCLA § 101(25) ("The terms 'respond' or 'response' means remove, removal, remedy, and remedial action; all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto."); *id.* §§ 101(23)-(24) (defining the terms "remove" or "removal" and "remedy" or "remedial action"); *Forest Park Nat'l Bank & Trust v. Ditchfield*, No. 10 C 3166, 2012 WL 3028342, at *23 (N.D. Ill. July 24, 2012) (citing CERCLA § 101(23), (25) (recognizing that investigative costs,

its burden of proof in support of its claims and against applicable defenses and apportionment considerations. *See* CERCLA § 113(f). In fact, the response costs that NSP identifies in its CERCLA § 107(a) claims are identical to the costs it identifies in its § 113(f) claims, except that its § 113(f) claims extend to costs yet to be incurred. (*Compare* Compl. ¶¶ 100, 105, *with* ¶¶ 125, 131.) Accordingly, in its Complaint, the response costs for which NSP seeks reimbursement under its CERCLA § 107(a) claim are identified in conclusory fashion as "those necessary response costs . . . that the court does not award under CERCLA § 113(f)." (Compl. ¶¶ 101, 106.) However, because the costs identified by NSP are recoverable, if at all, under CERCLA § 113(f), they cannot be recovered under CERCLA § 107(a).

Third, NSP cannot seek costs under CERCLA § 107(a) on grounds that those costs were incurred "voluntarily." In *Appleton Papers*, for example, the plaintiffs had entered a consent decree with the EPA and the State of Wisconsin, and the EPA had issued a unilateral administrative order against the plaintiffs and defendants (all PRPs with respect to the site) requiring cleanup of the portions of the site not covered by the consent decree. 572 F. Supp. 2d at 1037-38. The defendants, supported by the United States as *amicus curiae*, moved to dismiss the plaintiffs' CERCLA § 107(a) claim in its entirety arguing that the plaintiffs' exclusive remedy was for contribution under CERCLA § 113(f). *Id.* at

---

including costs to monitor, assess, and evaluate the release or threat of release of hazardous substances, are response costs recoverable under CERCLA); *City of Gary v. Shafer*, 2009 WL 1605136, at *15 (N.D. Ind. June 2, 2009); *Cont'l Title Co. v. Peoples Gas Light & Coke Co.*, 1999 WL 753933, at *3 (N.D. Ill. Sept. 15, 1999)).

1038. The plaintiffs "concede[d] that many of their costs were incurred as the result of adverse litigation against them and the consent decrees," and that those costs were recoverable only under a CERCLA § 113 contribution claim, but argued that other costs, "though associated with the adverse proceedings, were nevertheless voluntarily incurred by them" and therefore were recoverable under CERCLA § 107(a). *Id.* at 1041.

The district court in *Appleton Papers* rejected this argument because, under CERCLA, "courts are not interested in analyzing the particular nature of the costs sought (as Plaintiffs prefer) but rather focus simply on the PRP's procedural status, specifically, whether it has been 'subject' to an enforcement action." *Id.* at 1042.

> [T]he operative principle appears to be that § 107(a) is available to recover payments only where § 113(f) is not.  In cases where a claim for contribution can be asserted under § 113(f), § 107(a) cannot be used.

*Id.* at 1043.  Therefore, the court dismissed the plaintiffs' CERCLA § 107 claim because all of their costs were recoverable, if at all, under their CERCLA § 113(f) claim. *Id.* at 1043-44.  So here, any argument by NSP that its costs are recoverable under CERCLA § 107(a) and not § 113(f) because they are "voluntary" would be unavailing.

Moreover, NSP simply cannot claim that its response costs in this case were or will be incurred "voluntarily."  As set forth in NSP's Complaint, the United States and the State of Wisconsin have exercised their authority to compel response costs with respect to the *entire* Ashland Site, not just the portions where NSP has currently settled its liability. (*See* Compl. ¶¶ 33-34, 77-83.)  Any additional response actions appropriate for the cleanup of the Ashland Site will fall within the PRPs' common liability for the

site, assuming once again that NSP can meet its burden proof, to be apportioned among the PRPs under CERCLA § 113(f) if and to the extent each is liable. Furthermore, NSP completed an RI/FS for the entire Ashland Site, pursuant to the AOC issued in 2003. (*See id.* at ¶¶ 33-34.) The Record of Decision issued by the EPA in September 2010 sets forth the remedy for the entire site, including the remedy for Chequamegon Bay. (*Id.*) NSP cannot "voluntarily" clean up any portion of the Ashland Site pursuant to a remediation plan dictated by the EPA.[10] Like the plaintiffs in *Appleton Papers*, NSP is not a "philanthropic organization," and any plausible future response costs NSP might incur at the Ashland Site could not realistically be called "voluntary." *See Appleton Papers*, 572 F. Supp. 2d at 1043 n.8 ("The notion that any of the response costs paid by API and NCR were voluntary is curious, to say the least. API and NCR are not philanthropic organizations devoted to cleaning up environmental messes created by other companies. Their contributions to the response effort to the PCB contamination of the Lower Fox River resulted from their recognition that they were at least in part responsible for the contamination.").

Because all of the costs NSP has allegedly incurred are involuntary, and, in any

---

[10] It bears noting that once the EPA has begun compelling response activities, a PRP's further response activities are subject to the considerable threat of the EPA's enforcement powers. *See* CERCLA §§ 106(b)(1) and 107(a)(3); Civil Monetary Penalty Inflation Adjustment Rule, 73 Fed. Reg. 75,340 (Dec. 11, 2008) (EPA may fine PRPs $37,500 for each day of noncompliance with a unilateral administrative order or choose to perform the response activities itself and seek punitive damages of three times the response costs).

case, because all are recoverable under its CERCLA § 113 claim, NSP's cost recovery claim under CERCLA § 107(a) (Count I) should be dismissed.

## CONCLUSION

NSP's common law claims are preempted because they seek costs that are already subject to and apportioned by the CERCLA framework.  NSP's claim under CERCLA § 107(a) is also barred because CERCLA § 113(f) provides the exclusive remedy for NSP to recover its alleged response costs under CERCLA.  Dismissal of flawed these claims will also serve to narrow discovery and pretrial litigation in this complex case, and streamline the issue of contribution for trial.  For all of these reasons, the railroads respectfully request that this Court dismiss with prejudice NSP's claim for cost recovery under CERCLA § 107(a) (Count I) and its claims for common law negligence, nuisance, and contribution (Counts IV through VIII).

Dated:  October 22, 2012

s/Wendy M. Carlisle
Gregory A. Fontaine (MN #131908)
*gregory.fontaine@leonard.com*
    *Admitted pro hac vice*
Wendy M. Carlisle (MN #302351)
*wendy.carlisle@leonard.com*
    *Admitted pro hac vice*
Andrew W. Davis (MN #386634)
*andrew.davis@leonard.com*
    *Admitted in the Western District of Wisconsin*
Nathan E. Endrud (MN #389459)
*nathan.endrud@leonard.com*
    *Admitted pro hac vice*
**LEONARD, STREET AND DEINARD**
  Professional Association
150 South Fifth Street, Suite 2300
Minneapolis, MN  55402
Telephone:  (612) 335-1500

**ATTORNEYS FOR DEFENDANT SOO LINE RAILROAD COMPANY**

Dated:  October 22, 2012

s/David S. Becker
David S. Becker (IL #6203705)
*dbecker@freebornpeters.com*
    *Admitted in the Western District of Wisconsin*
Robert M. Baratta, Jr. (IL #6271932)
*bbaratta@freebornpeters.com*
    *Admission pending*
**FREEBORN & PETERS LLP**
311 S. Wacker Drive, Suite 3000
Chicago, IL  60606
Telephone: (312) 360-6622

**ATTORNEY FOR DEFENDANT WISCONSIN CENTRAL LTD.**