**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

_____

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| NORTHERN STATES POWER COMPANY, | ) | |
| a Wisconsin corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.      12-cv-602 |
| | ) | |
| THE CITY OF ASHLAND, WISCONSIN; | ) | |
| SOO LINE RAILROAD COMPANY; | ) | |
| and WISCONSIN CENTRAL, LTD., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

_____

## PLAINTIFF NORTHERN STATES POWER COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS SOO LINE RAILROAD COMPANY'S AND WISCONSIN CENTRAL, LTD.'S JOINT MOTION TO DISMISS

This is an action for cost recovery and contribution under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and state laws regarding the cleanup of a once highly industrialized, 40-acre site on the shores of Lake Superior in Northern Wisconsin.  For nearly a hundred years, the Ashland Lakefront Superfund Site ("Ashland Site") had been used for multiple industrial purposes, including lumbering and wood treatment, an unregulated municipal dump, construction, railway operations, wastewater treatment, a manufactured gas plant ("MGP"), and other activities.  To date, **only** Plaintiff Northern States Power Company, a Wisconsin corporation ("NSPW"), has undertaken any work at the Ashland Site.  Other parties have been notified of their liability but have refused to participate in the cleanup, riding instead on the coattails of NSPW who, although never owning nor operating the former MGP itself, has conducted all of the investigation and has agreed to

remediate, pursuant to a consent decree recently approved by this Court, the on-land portions of the Ashland Site.  NSPW has done all the work despite the well-known contributions by others, including those who are now "defunct" and known to be CERCLA "orphan shares."

As a result of NSPW's willingness and cooperation to move the project forward, NSPW (and its Wisconsin utility customers) already have spent millions of dollars at the Ashland Site, and with the recent approval of the consent decree, have committed to spend at least an estimated $40 million more in remediation of the on-land portion.  *See United States v. Northern States Power Co.*, No. 12-cv-00565-bbc, Dkt. # 12 (W.D. Wis. Nov. 2, 2012) ("2012 Consent Decree"). In addition, the 2012 Consent Decree does not address the sediment portion of the cleanup, which is still being negotiated.  The United States Environmental Protection Agency ("EPA") and the Wisconsin Department of Natural Resources ("WDNR") estimate that the sediment remedy could cost in excess of $100 million dollars.  CERCLA demands that all responsible parties—not just NSPW (and its rate payers)—must pay their fair share of the cleanup.  NSPW has, accordingly, brought this suit against the City of Ashland, Soo Line Railroad Company ("Soo Line") and Wisconsin Central, Ltd. ("WCL")—each of whom were notified by EPA of their liability for the Ashland Site—in order to recover those amounts that NSPW has spent and will spend in the future.

The City of Ashland answered the Complaint.  The other two defendants—Soo Line and WCL (collectively, the "Railroads")—while admitting NSPW has a well-pled cause of action for contribution under CERCLA § 113, have moved to dismiss NSPW's cost recovery claim under CERCLA § 107 and NSPW's state law tort claims.  The Railroads contend that neither claim is tenable—erroneously asserting that (1) a party cannot have a claim under CERCLA § 107 for any costs if a § 113 claim is available for other costs, and (2) NSPW has not incurred any costs

recoverable under state law that are not allocable under CERCLA.  The Railroads, however, are wrong.  The law is clear that NSPW can pursue CERCLA claims under both § 107 and § 113 because NSPW seeks recovery of different costs under the different statutory provisions. Moreover, it is premature for the Court to consider these issues now, and NSPW has clearly met the notice pleading standards for alleging that it has incurred costs recoverable under Wisconsin state law and not preempted by CERCLA.

## BACKGROUND

The Ashland Site is located along the shore of Chequamegon Bay, Lake Superior, in Ashland, Wisconsin.  *See* Aug. 17, 2012 Complaint, Dkt. # 1 ("Compl.") ¶ 2.  The Ashland Site has been divided by EPA into four areas of concern: (a) Chequamegon Bay; (b) soils and shallow groundwater in Kreher Park; (c) soils and shallow groundwater in the Upper Bluff/Filled Ravine; and (d) deep groundwater in the Copper Falls Aquifer underlying the Upper Bluff.  *Id*. at Ex. 1 (Illustrative Site Map).  NSPW brought this action to recover past and future response costs incurred in connection with the Chequamegon Bay and Kreher Park areas, natural resource damages, and other damages associated with the Ashland Site.  NSPW does not seek the recovery of response costs or damages for the cleanup of the Upper Bluff/Filled Ravine or the deep groundwater in the Copper Falls Aquifer underlying the Upper Bluff at this time.  *Id*. at ¶ 2.

NSPW, a Wisconsin public utility, is a current owner of a small portion of property on the Upper Bluff area of the Ashland Site.  *Id*. at  ¶ 3.  From 1885 to 1947, a MGP that provided gas to the Ashland community was located on this Upper Bluff area.  *Id*.  The MGP ceased operations in 1947, decades before NSPW acquired the property, and NSPW has only utilized the property as an equipment, repair and storage facility.  *Id*.  In 1989, Defendant City of Ashland informed WDNR about potential contamination in Kreher Park.  Compl. at ¶ 30.  As a result of subsequent investigation, much of which was done by NSPW, the EPA and WDNR

(collectively, the "Agencies") determined that the Ashland Site is contaminated with certain "contaminants of concern" or "COCs." *Id*. at ¶ 4.

NSPW has undertaken extensive investigatory, remedial and other activities at the entire Ashland Site—not just the portion NSPW currently owns. *Id*. at ¶¶ 5, 77. Indeed, other than the Agencies, NSPW is the only party to do any work or provide funding to address the identified contamination. *Id*. at ¶ 35. Since 1995, NSPW has performed and/or funded a series of investigations to characterize subsurface contamination and affected sediments at the Ashland Site and to identify historical activities and potentially responsible parties ("PRPs"). *Id*. at ¶ 32. NSPW also performed two interim removal actions at the Ashland Site: (a) installing a contaminant-recovery system to pump and treat contaminants from the Copper Falls Aquifer; and (b) excavating contaminated soil and installing a low permeability cap and a groundwater extraction well. Compl. at ¶ 32.

Additionally, in November 2003, NSPW voluntarily entered into an Administrative Order on Consent ("2003 AOC") with EPA to perform a Remedial Investigation and Feasibility Study ("RI/FS") at the Ashland Site. *Id*. at ¶ 6. The objectives of the RI/FS were to determine the nature and extent of contamination and any threat to human health, to determine and evaluate alternatives for remedial action, and to collect data for developing and evaluating remedial alternatives. *Id*.; *see also* 2003 AOC, Dkt. # 1-2, at ¶¶ 1 and 8. NSPW completed the RI/FS in 2008, and EPA issued a notice of completion for the 2003 AOC in 2010. Compl. at ¶ 6.

NSPW has been in close cooperation with the Agencies throughout the investigation of the Ashland Site, including taking the leading role on site investigations, preparing technical work plans, remediation plans and design reports, implementing interim actions and providing project management and technical support. *Id*. at ¶ 35. NSPW has incurred, and will continue

4

to incur, significant response costs under CERCLA.  *See id*. at ¶¶ 5-12.  NSPW also has incurred

costs that are not allocable under CERCLA.  *Id*. at ¶ 32.

As this Court is aware, NSPW recently entered into the 2012 Consent Decree with the

United States, the State of Wisconsin, and the natural resource trustees regarding cleanup of the

on-land portion of the Ashland Site and natural resource damages.  The Defendants objected, but

this Court rejected those claims and approved the decree, finding that it was substantively fair

and consistent with the purposes of CERCLA.  *See Northern States Power Co.*, No. 12-cv-

00565-bbc, Dkt. # 11 (Oct. 19, 2012); *see also id.* Dkt. ## 9-1 and 9-2 (Oct. 15, 2012).  As the

United States and the State of Wisconsin noted in their motion for approval of the 2012 Consent

Decree, NSPW—not Defendants—has been the only party willing to do the work to implement

the selected remedy at the Ashland Site.  *See id.* Dkt. # 9 at 7.  Defendants have refused to

meaningfully participate.  As such, NSPW has filed the instant action to seek relief.

## STANDARD OF REVIEW

It is well established that a complaint "need only provide a 'short and plain statement of

the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with

'fair notice' of the claim and its basis."  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir.

2008) (citations omitted).  A motion to dismiss under Rule 12(b)(6) must be denied where there

are "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  That low hurdle is met where, as here, "the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Seventh Circuit has emphasized that even after the Supreme Court's ruling in *Bell*

*Atlantic*, federal courts still adhere to a notice-pleading standard.  "A plaintiff must still provide

only enough detail to give the defendant fair notice of what the claim is and the grounds upon

which it rests." *Tamayo*, 526 F.3d at 1083 (internal quotations and citation omitted).  The complaint must be liberally construed, viewing all "factual allegations and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff."  *Yasak v. Retirement Bd. of Policemen's Annuity and Benefit Fund of Chicago*, 357 F.3d 677, 678 (7th Cir. 2004) (internal quotations and citation omitted).

## ARGUMENT

## I.   NSPW HAS A CAUSE OF ACTION UNDER CERCLA § 107

The Railroads claim that NSPW's exclusive remedy for all of its CERCLA response costs arises under CERCLA § 113.  *See* Railroads' Memorandum In Support Of Joint Motion To Dismiss, Dkt. # 19 ("Memo.") 14-16.  The Railroads are wrong.  While all of NSPW's response costs are recoverable under CERCLA, some courts have held that certain categories of costs that NSPW has incurred are specifically recoverable under CERCLA § 107 – in particular, those costs incurred by NSPW prior to entering into the 2012 Consent Decree.  As a result, NSPW is entitled to bring claims under both CERCLA §§ 107 and 113 as a matter of law.  Moreover, NSPW has properly pled facts sufficient to support a CERCLA § 107 claim and dismissal at this time is unwarranted.  The Railroad's motion to dismiss should, accordingly, be denied.

### A.   NSPW Can Bring Both CERCLA § 107 And § 113 Claims In This Lawsuit

The Railroads contend that because NSPW resolved its liability with EPA for remediation of the on-land portion of the Ashland Site through a judicially approved consent decree, **any** cost that NSPW has **ever** incurred with respect to the Ashland Site can only be recovered under CERCLA § 113.  *See* Memo. at 14-16.  However, the Railroads misread the Supreme Court's seminal decision in *United States v. Atlantic Research Corp.*, 551 U.S. 128, 136 (2007), misapply subsequent case law, and, generally, oversimplify NSPW's CERCLA

6

claims, which include response costs incurred under both the 2012 Consent Decree and otherwise.

### 1.    The Railroads Misapply CERCLA Law

Contrary to the Railroads' assertions, both CERCLA § 107(a) and § 113(f)  provide a cause of action for PRPs to recover costs associated with the cleanup of a contaminated site. CERCLA § 107 creates a right of action to recover necessary response costs, and CERCLA § 113 creates a right of action for contribution.  Case law interpreting the interplay between these two sections clarifies that they are distinct remedies that complement each other by basing the choice of a proper remedy on the specific costs incurred.

Although some courts had historically found that PRPs could only pursue CERCLA § 113 claims, recent decisions clarify that both § 107 and § 113 are available to PRPs such as NSPW.  In 2007, the Supreme Court rejected categorical exclusions under CERCLA, holding that, based on the plain language of § 107(a)(4)(B), CERCLA provides PRPs a cause of action to recover costs from other PRPs under both § 107 and § 113.  *See Atlantic Research*, 551 U.S. at 136 ("[T]he plain language of [§ 107(a)(4)(B)] authorizes cost-recovery actions by any private party, including PRPs.").  *Atlantic Research* reiterated that the remedies provided under CERCLA §§ 107 and 113 are "clearly distinct" but not mutually exclusive.  *Id.* at 138-39.  To distinguish when a cost recovery action under CERCLA § 107(a) is appropriate, as opposed to a contribution action under CERCLA § 113(f), the Court noted that "§ 107(a) permits a PRP to recover only the costs it has 'incurred' in cleaning up a site."  *Id.* at 139 (citation omitted).  By contrast, "[w]hen a party pays to satisfy a settlement agreement or a court judgment, it does not incur its own costs of response[, r]ather, it reimburses other parties for costs that those parties incurred."  *Id.*  The Supreme Court, however, left open the question of whether a PRP that has

incurred costs pursuant to agreements with the government, such as the entry of a consent decree, has a claim under CERCLA § 113, § 107 or both.  *Id.* at 139 n. 6.

Courts since *Atlantic Research*, including the Seventh Circuit, have found that actions under CERCLA §§ 107(a) and 113(f) are **not** mutually exclusive.  *See, e.g., United States v. NCR Corp.*, 688 F.3d 833, 844 (7th Cir. 2012) (expressly recognizing that "the two statutes may not always be mutually exclusive"); *City of Waukegan v. National Gypsum Co*., No. 07 C 5008, 2009 WL 4043295, *7 and n. 2 (N.D. Ill. 2009) (finding City of Waukegan could proceed with both §§ 107 and 113 claims).  Contrary to the Railroads' claims, just because NSPW has a § 113 claim for its 2012 Consent Decree response costs does **not** mean that it must pursue all of its response costs under § 113, or that NSPW is categorically precluded from pleading an action under § 107(a) for other response costs.  Where, as here, a party alleges certain costs are recoverable under CERCLA § 113(f) (*i.e.*, those costs incurred pursuant to the 2012 Consent Decree) and certain other costs are recoverable under CERCLA § 107(a) (*i.e.*, those costs incurred "voluntarily" prior to entry of the 2012 Consent Decree), both causes of action are properly pled and a motion to dismiss must be denied.

The Railroad's reliance on *Appleton Papers Inc. v. George A. Whiting Paper Co.*, 572 F. Supp. 2d 1034 (E.D. Wis. 2008) ("*Appleton Papers I*") and *Metropolitan Water Reclamation Dist. of Greater Chicago v. North Am. Galvanizing & Coatings, Inc.*, 473 F.3d 824 (7th Cir. 2007) ("*Metropolitan Water*"), for the proposition that "recovery under CERCLA § 107 is unavailable where, as here, a claim for contribution can be asserted under CERCLA[,]" is misplaced.  Memo. at 15.  Although CERCLA § 107 claims were dismissed in *Appleton Papers I*, and the plaintiffs were required to seek recovery of all of their costs under § 113, the court recognized that a party could bring both a § 107 and a § 113 claim in the same case.  *Appleton*

*Papers I*, 572 F. Supp. 2d at 1043.  In fact, the Seventh Circuit, directly addressed this point in

the enforcement action related to *Appleton Papers I* and determined that "the two statutes may

not always be mutually exclusive."  *NCR Corp.*, 688 F.3d at 844 (suggesting that some of the

costs incurred by plaintiffs in *Appleton Papers I*, and that were pursued in the district court under

§ 113, may actually have been recoverable under § 107(a)).

     *Metropolitan Water*, which was decided approximately five months **before** *Atlantic*

*Research*, involved a wholly voluntary cleanup by the water district.  473 F.3d at 825.  The

holding in *Metropolitan Water* was strictly that a PRP who incurred direct costs that were not

subject to an action under §§ 106 or 107 could maintain an action for cost recovery under

CERCLA § 107(a).  *Id.* at 834-35.  NSPW's claim for § 107 costs is perfectly consistent with

*Metropolitan Water* because the costs it incurred before and under the 2003 AOC were not

subject to an action under CERCLA §§ 106 or 107.[1]

### 2.  The Railroads Ignore The Scope Of NSPW's Response Costs

     NSPW seeks to recover under CERCLA § 107 the response costs it directly incurred after

it began investigating and cleaning up the Ashland Site in 1995 (but **before** entering into the

2012 Consent Decree), including, for example, the costs it directly incurred pursuant to the 2003

AOC.  *See* Compl. at ¶ 95 ("NSPW seeks reimbursement from the City, pursuant to CERCLA

§ 107(a), 42 U.S.C. § 9607(a), for those necessary response costs that NSPW has incurred in

investigating and remediating the hazardous substances that the City has released and/or

disposed of to the Ashland Facility that the court does ***not*** award under CERCLA § 113(f), 42

U.S.C. § 9613(f).") (emphasis added).  NSPW's work was completed under the 2003 AOC in

---

[1]     To the extent *Metropolitan Water* and the Railroads rely on *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761 (7th Cir. 1994), for the proposition that PRPs' voluntarily incurred costs are not recoverable under CERCLA § 107, their argument must fail because the reasoning of *Akzo Coatings* did not survive *Atlantic Research*.

December 2010.  Under the 2003 AOC, NSPW incurred direct costs conducting an RI/FS investigation that are not the same as those costs that have been or will be incurred for the matters covered by the 2012 Consent Decree.  *Id.* at ¶¶ 5-7, 33, 81.[2]  Similarly, before NSPW entered into the 2003 AOC, NSPW incurred direct costs, including site investigation costs, that also are **not** the same as those costs that have been or will be incurred for the matters covered by the 2012 Consent Decree.

These distinct categories of costs allow NSPW to pursue claims under both CERCLA §§ 107 and 113.  For example, in *City of Waukegan v. National Gypsum Co*., the plaintiff (like NSPW) incurred costs pursuant to a consent decree, but also incurred direct response costs beyond the consent decree.  Because "response costs for which it seeks [cost] recovery [under § 107 we]re not payments made pursuant to obligations under the consent decrees but rather [we]re expenses that resulted from actions it took on its own beyond what the decrees required," the court found that dismissal of the City of Waukegan's § 107 claim was inappropriate, and allowed the case to proceed with both § 107 and § 113 claims.  2009 WL 4043295, at *7 and n. 2; *see also Schaefer v. Town of Victor*, 457 F.3d 188, 201-202 (2d Cir. 2006) (holding that plaintiff could pursue § 107 claim for response costs incurred before consent decree).

The Railroads' reliance on *Appleton Papers I* is again improper, because in this instance, NSPW has incurred costs that **are** recoverable under CERCLA § 107(a).  *See* Compl. at ¶¶ 5-7, 32-33, 81; *cf.*, *Schaefer*, 457 F.3d at 201-202 (holding that response costs incurred prior to entry

---

[2]     NSPW does not contend that its costs under the 2012 Consent Decree are recoverable under CERCLA § 107.  Its other response costs, however, are recoverable under CERCLA § 107 and, as set forth above, while the Railroads seem to contend that all of NSPW's response costs are recoverable under CERCLA § 113, some courts have concluded that costs not incurred pursuant to a judicially approved consent decree are recoverable under CERCLA § 107.  *See supra*  at I.A.1.

of consent decree were not incurred solely due to the imposition of liability through a final administrative order and were recoverable under § 107).  Also, unlike in *Appleton Papers I*, the costs NSPW incurred prior to the 2012 Consent Decree were undertaken "voluntarily" pursuant to an administrative order on consent that did not discharge NSPW's liability for the Ashland Site.  *See infra* at Part A.3; *see also*, *e.g.*, *City of Waukegan*, 2009 WL 4043295 at *7 ("Unlike in *Appleton Papers [I]*, however, Waukegan alleges that the response costs for which it seeks recovery are not payments made pursuant to obligations under the consent decrees but rather are expenses that resulted from actions it took on its own beyond what the decrees required.").

### 3.    NSPW's Costs Before The 2012 Consent Decree Were "Voluntarily" Incurred

Prior to any action pursuant to CERCLA §§ 106 or 107 or any judicial or administrative settlement, NSPW had directly incurred millions of dollars of response costs.  The Railroads try to characterize NSPW's costs as "involuntary" costs that cannot be recovered under § 107, but they are wrong.  *See* Memo. at 19-21.  "Voluntary" in the CERCLA context is not as narrow as the Railroads submit.  And, in any event, NSPW's 2003 AOC response costs need not be "voluntary" to be recoverable under Section 107.

In the aftermath of *Atlantic Research*, a number of courts have concluded that response costs incurred under an administrative order on consent—such as the 2003 AOC—are recoverable under CERCLA § 107.  *See, e.g., ITT Indus., Inc. v. BorgWarner, Inc.*, 506 F.3d 452, 461 (6th Cir. 2007) (finding that administrative order was not an administratively approved settlement because plaintiff was not "simply reimbursing the United States for costs it 'incurred'" and holding that "the AOC does not constitute an administratively approved settlement"); *W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85, 90 (2d Cir. 2009) ("[T]he question before us is whether a potentially responsible party who has remediated a

contaminated site pursuant to an administrative consent order has a cause of action to pursue

necessary associated costs under section 107.  We conclude that it does.").

Further, many courts have rejected the overly restrictive interpretation of the word

"voluntary" that the Railroads claim here.  For example, the district court in *Reichhold, Inc. v.*

*United States Metals Refining Co.*, held:

> In this context, the term is used to distinguish between costs undertaken as the
> result of a legal judgment or settlement, and those undertaken for other reasons.
> Costs undertaken as the result of a legal judgment or settlement are not
> "voluntary" and are thus recoverable only under § 113.  Costs incurred for any
> other reason—even when incurred as the result of a protracted negotiation with
> the [state environmental agency]—are voluntary and thus recoverable under
> § 107.  As Reichhold correctly notes, Defendants' interpretation of the term
> voluntary, "if adopted, would have the anomalous result of barring the doors of
> the courthouse to CERCLA plaintiffs who cannot bring a CERCLA § 113 claim
> (having not been the prior subject of a § 106 or § 107 claim...), but whose cleanup
> may not have been "voluntary" in the strictest sense."  This result was not the
> intent of the Court in *Atlantic Research*.

Civ. No. 03-453, 2008 WL 5046780, * 7 (D.N.J. 2008) (citation omitted); *see also Schaefer*, 457

F.3d at 201 (finding that plaintiff could pursue its § 107 action because "response costs were not

incurred solely due to the imposition of liability through a final administrative order.") (internal

quotations and citation omitted).

Against this backdrop, NSPW's early investigation and 2003 AOC costs were clearly

"voluntarily" incurred for the purposes of CERCLA recovery.  In fact, prior to 2012, there was

no CERCLA §§ 106 or 107 civil action, and prior to 2012, NSPW was not compelled by judicial

or administrative order to incur costs.  For CERCLA purposes, NSPW "voluntarily" incurred

early investigation costs and "voluntarily" entered into and agreed to comply with the terms of

the 2003 AOC.  Such costs are, accordingly, recoverable under Section 107.  *See Atlantic*

*Research*, 551 U.S. at 139, n. 9 (holding "costs incurred voluntarily are recoverably only by way

of § 107(a)(4)(B)"); *United States v. Pharmacia Corp.*, 713 F. Supp. 2d 785, 789 (S.D. Ill. 2010) (same).

Furthermore, it is clear from *Atlantic Research* that the framework for determining whether to bring a CERCLA § 107 action for cost recovery rather than a § 113 contribution claim does ***not*** turn merely on whether costs are "voluntary," but on whether costs have been incurred directly or were reimbursement costs. *See W.R. Grace*, 559 F.3d at 92 ("In the same manner that section 107(a) is not limited solely to 'innocent' parties, section 107(a) does not specify that only parties who 'voluntarily' remediate a site have a cause of action."). Not even the Railroads argue that the early investigation and response costs or the 2003 AOC costs were "reimbursements." Accordingly, NSPW is clearly entitled to pursue its CERCLA § 107 claim.

**B.      It Is Premature For the Court To Consider The Railroads' Claims On NSPW's Adequately Pled Cause Of Action Under CERCLA § 107**

NSPW's Complaint includes specific allegations that it has incurred direct costs not addressed or required by the terms of its obligations under the 2012 Consent Decree. *See* Compl. at ¶¶ 5-7, 32-33, 81. To state a claim for relief under CERCLA § 107, NSPW only needs to provide a "short and plain statement of the claim showing that [it] is entitled to relief[.]" Fed. R. Civ. P. 8. NSPW easily meets this standard. It has sufficiently pled a mixed claim for the costs it has incurred at the Ashland Site. At this stage, NSPW's allegations must be accepted as true. *Yasak v. Retirement Bd. of Policemen's Annuity and Benefit Fund of Chicago*, 357 F.3d 677, 679 (7th Cir. 2004); *see also* Memo. at 2 n.2 (accepting NSWP's allegations as true.). It is, accordingly, too soon for the Court to conclusively determine that NSPW is limited to CERCLA § 113 and that NSPW has not incurred any costs recoverable under § 107. For this independent reason, the Railroads' motion to dismiss NSPW's CERCLA § 107 claim should be denied.

## II.      NSPW'S STATE LAW CLAIMS ARE NOT PREEMPTED BY CERCLA

The Railroads contend that NSPW's state common law claims—common law negligence, creation and maintenance of a public nuisance, and contribution—are preempted because they seek recovery of the same costs as NSPW's CERCLA claims.  *See* Memo. at 8, 11-14.  In effect, the Railroads' argument is that NSPW is preempted from bringing state law claims if doing so would permit it to recover the same costs under both CERCLA and other state or federal laws. Memo. at 8-9.  The Railroads again misconstrue the scope of costs NSPW has asserted.  Their motion is procedurally premature and substantively inaccurate as NSPW does **not** seek a double recovery under both CERCLA and Wisconsin state law for the same costs, nor does NSPW seek costs under state law that would frustrate the CERCLA scheme of allocation.

<u>First</u>, the Railroads' claims are premature.  Notably, all of the cases the Railroads cite, save one, have been decided well after the pleading stage.[3]  Notably *Appleton Papers Inc. v. George A. Whiting Paper Co.*, , upon which the Railroad's principally rely, was decided on summary judgment and **after trial on all CERCLA claims including the recoverability of CERCLA response costs.**  Indeed, the Court had already made a determination that all of the costs at issue in the case "were incurred under CERCLA and were allocable."  No. 08-C-16, 2012 WL 4748611, *2 (E.D. Wis. 2012) ("*Appleton Papers II*") (emphasis in original); *see also PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 613 (7th Cir. 1998) (bench trial); *Niagara*

---

[3]      The lone exception cited by the Railroads, *Ashtabula River Coop. Group II v. Conrail*, 549 F. Supp. 2d 981, 985-86 (N.D. Ohio 2008), is an out of circuit district court case, offering little precedential value, and is readily distinguishable.  In *Ashtabula*, the plaintiffs consisted of a PRP group that was formed with the singular purpose of sharing in the costs of cleaning up the relevant site.  *Id.*  Because the express purpose of this group was to accomplish the remediation of the site, the only costs that the PRP group was seeking to recover were limited to those arising out of their common CERCLA liability.  NSPW is not limited in the recovery it seeks and has properly pled costs that do not fall within CERCLA's allocation scheme.

*Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 118 (2d Cir. 2010) (summary

judgment); *New Mexico v. General Elec. Co.*, 467 F.3d 1223, 1226 (10th Cir. 2006) (same).

By contrast, courts **deny** CERCLA preemption motions to dismiss, citing the fact that

non-duplicative costs may exist. *See*, *e.g.*, *City of Waukegan v. National Gypsum Co.*, 587 F.

Supp. 2d 997, 1011 (N.D. Ill. 2008) ("Because the two claims potentially seek recovery for non-

overlapping costs, the Court declines to dismiss the [Illinois state law] claim."); *North Am.*

*Galvanizing & Coatings, Inc. v. Lake River Corp.*, No. 08 C 7353, 2010 WL 2350588, *4-5

(N.D. Ill. 2010) (instructing plaintiff to amend complaint and independently plead state law

claim because "it does not seek the same contribution as North America's CERCLA contribution

claim").

Here, no court has made any determination regarding the costs and damages pled by

NSPW.  In this early stage of litigation—where discovery has not yet begun—it would be

imprudent to dismiss NSPW's state law claims outright because of a mere potential for double

recovery. *See Truck Components, Inc. v. K-H Corp.*, No. 94 C 50250, 1995 WL 692541, *11

(N.D. Ill. 1995) ("[P]laintiffs remain free to plead alternative theories so long as they are

otherwise available under the law."); *see also New York v. Hickey's Carting, Inc.*, 380 F. Supp.

2d 108, 115 (E.D.N.Y. 2005) ("[T]he case for preemption based on the likelihood of double

recovery [is] stronger ... at the summary judgment stage, as opposed to the pleading stage,"

where neither side has had the opportunity to put forth any evidence showing that the costs

sought under common law claims could be recovered under CERCLA.).

Second, NSPW's state law claims are **not** preempted.  As the Supreme Court has made

clear, courts should apply a "presumption against preemption." *Wyeth v. Levine*, 555 U.S. 555,

565 n.3 (2009).  The starting point for this Court's analysis must be "the basic assumption that

Congress did not intend to displace state law." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). In fact, CERCLA fully supports the proposition that it does not presumptively preempt state or local law. *See*, *e.g.*, 42 U.S.C. § 9652(d) ("Nothing in this Act shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants."); *see also* 42 U.S.C. §§ 9613(f)(1), 9614(a). Thus, CERCLA encourages state relief and only prohibits state compensatory recovery for the **same** response costs recoverable under CERCLA, or "double recovery."

The presumption against preemption cannot be overcome in this case because NSPW's state law claims do not stand as an obstacle to the allocation of costs under CERCLA §§ 107(a) or 113(f).[4] NSPW does not seek merely those costs not awarded under CERLCA—it seeks costs not subject to CERCLA's allocation scheme.

Courts make clear that if the damages sought under state law are **not** response costs allocable under CERCLA, then there is no conflict and no risk of double recovery. *See*, *e.g.*, *Solvent Chem. Co. v. E.I. Dupont De Nemours & Co.*, 242 F. Supp. 2d 196, 211 (W.D.N.Y. 2002) ("[T]here may be additional areas not covered by CERCLA where a state law claim would not be duplicative," and therefore not preempted.); *People v. Northbrook Sports Club*, No. 99 C 4038, 1999 WL 1102740, *3 (N.D. Ill. 1999) ("CERCLA encourages state relief and only prohibits compensatory recovery for the same response costs under both CERCLA and state or

---

[4]      Conflict preemption exists where either (1) "it is impossible for a private party to comply with both state and federal requirements," or (2) "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (internal quotations and citations omitted). The Railroads do not contend that it would be impossible to comply with the state-law duties NSPW seeks to impose without violating federal law. Rather, the Railroads invoke the second type of conflict preemption—sometimes referred to as "obstacle" preemption.

other federal laws."); *Durham Mfg. Co. v. Merriam Mfg. Co*., 128 F. Supp. 2d 97, 102-03 (D. Conn. 2001) (state law claim for cleanup of hazardous waste allowed because state claim had different elements).

Only where a party seeks to recover damages that have already been or will be allocated under CERCLA do courts preempt state law claims.  Significantly, each case cited by defendants in support of their motion involves state claims seeking recovery of **the exact same** response costs sought under CERCLA.  *See*, *e.g.*, *PMC,* 151 F.3d at 618 (finding Illinois contribution action is preempted by CERCLA because it requested the exact same costs sought under CERCLA); *Appleton Papers II*, 2012 WL 4748611, at *1 (holding defendants' counterclaims preempted because state law claim damages are the same as their alleged CERCLA damages). But that is clearly not the case here.  As such, the Railroads' cited cases are inapposite.

NSPW has plainly alleged in its Complaint that its state common law damages are separate and apart from the damages it seeks pursuant to CERCLA and do not fall within CERCLA's scheme.  As the Railroads themselves acknowledge, NSPW's allegations of fact must be accepted as true and complete for purposes of this motion.  Memo. at 2 n.2; *see also Yasak v. Retirement Bd. of Policemen's Annuity and Benefit Fund of Chicago*, 357 F.3d 677, 679 (7th Cir. 2004).  The Railroads' motion to dismiss NSPW's state law claims should, accordingly, be denied.[5]  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (where there are "enough facts to state a claim to relief that is plausible on its face," a motion to dismiss must be

---

[5]      If the Court concludes that NSPW has not adequately pled its non-CERCLA costs, the proper remedy is to allow NSPW leave to amend its Complaint to further plead those costs.  *See Dugan v. Selco Indus., Inc.*, No. 96 C 8404, 1997 WL 701336, *2 (N.D. Ill. 1997) (denying defendant's motion to dismiss and holding that "leave to amend the pleadings is liberally granted" in order to advance "one of Rule 15's underlying purposes, specifically, the adjudication of claims on their merits rather than on procedural technicalities").

17

denied); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (A complaint "need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis.").

## **CONCLUSION**

For the foregoing reasons, Plaintiff Northern States Power Company respectfully requests that the Court deny Defendants Soo Line's and Wisconsin Central's joint motion to dismiss.

Dated: November 13, 2012                    Respectfully submitted,


                                            /s/ Mary Rose Alexander _____
                                            Mary Rose Alexander
                                            Arthur Foerster
                                            Margrethe Kearney
                                            LATHAM & WATKINS LLP
                                            233 South Wacker Drive, Suite 5800
                                            Chicago, IL 60606
                                            Telephone: (312) 876-7700
                                            Facsimile: (312) 993-9767

                                            Jon Furlow
                                            David A. Crass
                                            MICHAEL BEST & FRIEDRICH LLP
                                            One South Pinckney Street, Suite 700
                                            Madison, WI 53703
                                            Telephone: (608) 257-3501
                                            Facsimile: (608) 283-2275

                                            *Attorneys for Plaintiff*
                                            *Northern States Power Company*