IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| NORTHERN STATES POWER COMPANY, a Wisconsin corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF ASHLAND, WISCONSIN; SOO LINE RAILROAD COMPANY; and WISCONSIN CENTRAL, LTD.,<br><br>Defendants. | Case No. 12-cv-602<br><br><br><br>**DEFENDANT SOO LINE RAILROAD COMPANY'S AND WISCONSIN CENTRAL, LTD.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

None of the legal arguments offered by NSP in its response brief can save its claims from dismissal. First, while the Railroads acknowledge NSP's leading role at the Ashland Site to date, that is merely a reflection of NSP's and its predecessor's primary historical involvement at—and NSP's resulting liability for—the Ashland Site, and wholly irrelevant to the legal issues presented to this Court by the Railroads' motion to dismiss. Second, NSP's common law claims are preempted because, other than bald assertions in its brief, and citations to inapposite case law, NSP has failed to support its position that its state law claims seek damages that are independent of and/or not recoverable under CERCLA. Indeed, NSP has failed to even try to rebut the Railroads' argument that those costs and damages are identical across all claims. Finally, NSP's arguments regarding its claim under CERCLA § 107(a) fail because a claim for contribution under CERCLA § 113 is the exclusive remedy for the common liability alleged by NSP in this case. NSP's attempt to parse its costs as pre- and post-consent decree (as "voluntary" or otherwise) is therefore irrelevant to this analysis. This Court should reject the arguments advanced by NSP and dismiss NSP's CERCLA § 107(a) and Wisconsin common law claims with prejudice.

9282771v3

# ARGUMENT

## I. NSP'S COMMON LAW CLAIMS ARE PREEMPTED BECAUSE THEY RELY ON THE SAME CONDUCT AND SEEK THE SAME COSTS AND DAMAGES AS ITS CERCLA CLAIMS.

NSP asserts that dismissal of its common law claims would be premature because it *might* seek damages or costs that are not duplicative of its CERCLA claims. (NSP Memorandum ("NSP Mem.") at 15.) NSP then changes course, arguing that "its state common law damages are separate and apart from the damages it seeks pursuant to CERCLA." (NSP Mem. at 17.) What NSP does not attempt to argue, because it has no factual or legal basis for doing so, is that "separate and apart" means that its common law claims are different from its CERCLA claims. As the Railroads demonstrated at length in their initial Memorandum, the very limited allegations asserted in NSP's Complaint against Soo Line and Wisconsin Central to support NSP's claims for common law liability are not separate and apart at all—they rely on precisely the same conduct, and seek recovery of precisely the same costs and damages, as its claims under CERCLA §§ 107(a) and 113(f). (*See* Railroads' Memorandum ("Defs.' Mem.") at 11-13.)

NSP has wholly failed to respond to the Railroads' argument, or to otherwise define or delineate the different costs and damages sought under Wisconsin common law and under CERCLA, except through this conclusory statement that its common law damages are "separate and apart" from the damages it seeks under CERCLA. (NSP Mem. at 17.) That bare assertion, made for the first time in NSP's response brief, and unsupported by any allegations in its Complaint, is simply insufficient to overcome the legal deficiency of NSP's common law claims.

9282771v3

Federal courts in the Seventh Circuit—including in the Eastern District of Wisconsin—as well as courts in the Second, Fifth, Sixth, and Ninth Circuits, have all consistently held that CERCLA preempts state law claims (1) that seek to recover the *same* costs and damages as are sought under CERCLA, and (2) that seek to recover costs and damages that are precluded as non-recoverable under CERCLA. *See, e.g.*, *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 138 (2d Cir. 2010) (common law claims for contribution that seek apportionment of the *same* costs that would be apportioned under CERCLA are preempted); *PMC, Inc. v. Sherman-Williams Co.*, 151 F.3d 610, 617-18 (7th Cir. 1998) (state law contribution claim preempted because it sought recovery of costs that were barred under CERCLA as inconsistent with the National Contingency Plan, and would thus circumvent and conflict with CERCLA's requirements for cost recovery); *Appleton Papers v. George A. Whiting Paper Co.*, No. 08-cv-16, 2012 WL 4748611, at *2 (E.D. Wis. Oct. 4, 2012) (state law claims for contribution, nuisance, and negligence preempted because they sought the same costs and damages that arose under CERCLA and were subject to reallocation under CERCLA); (*see also* Defs.' Mem. at 7-11) (discussing additional cases).  NSP has offered no persuasive reason why this precedent should not govern in this case.

Nor is the dismissal of NSP's common law claims premature, particularly in light of the absence of any allegations in NSP's Complaint that purport to set forth different grounds for liability or damages underlying its common law claims.  Indeed, federal courts have rejected precisely the argument advanced by NSP.  For example, in *Asthtabula River Corp. Grp. v. Conrail, Inc.*, 549 F. Supp. 2d 981, 986 (N.D. Ohio 2008),

3

9282771v3

a group of railroad-defendants moved to dismiss common law claims asserted by a plaintiff-PRP on the grounds that the plaintiff's common law claims sought the same damages as its CERCLA claims. In response, the plaintiff argued that under Federal Rule 8(e), it was entitled to simultaneously plead mutually exclusive claims in the alternative, and that there was a possibility that it would ultimately not be able to recover all of its costs and damages under CERCLA, making dismissal of its common law claims on a motion to dismiss inappropriate. *Id.* The district court rejected the plaintiff's argument: "The Court agrees that dismissal of the state law claims is warranted on this basis. Plaintiff does not dispute that it is seeking exactly the same damages under § 107 of CERCLA and Counts II, III, and IV." *Id.* Similarly, here, NSP cannot dispute, and has not refuted, that its common law claims seek the same costs and damages that it seeks to recover by way of its claims under CERCLA §§ 107 and 113.

Those cases that *do* allow state law claims to be asserted, including the cases cited and relied on by NSP, are inapposite. (*See* NSP Mem. at 15.) In *City of Waukegan v. National Gypsum Co.*, 587 F. Supp. 2d 997, 1011 (N.D. Ill. 2008), for example, the district court determined that plaintiff's claim under the Illinois Water Pollutant Discharge Act ("IWPDA") was not preempted because the IWPDA allowed recovery of attorney's fees (while CERCLA did not), and because the IWPDA would allow recovery of costs not consistent with the NCP. Unlike *City of Waukegan*, however, NSP has not sought any other distinct costs or damages, not recoverable under CERCLA, in

4

connection with its Wisconsin common law claims. Further, even assuming that *City of Waukegan* is consistent with Seventh Circuit precedent, which is doubtful,[1] it is distinguishable because NSP has alleged in this case that all costs and damages it seeks are consistent with the NCP, which is a prerequisite for any recovery by NSP under CERCLA. (Compl. ¶¶ 79, 81.); (Defs.' Mem. at 13).

In *North American Galvanizing & Coatings, Inc. v. Lake River Corp.*, 2010 WL 2350588, at \*\*4-5 (N.D. Ill. 2010), also cited by NSP, the court allowed plaintiff's state law contribution claim to go forward because it sought contribution for already-determined, *independent* state tort liability. By contrast, as noted above, NSP's common law claims here are based on the same conduct and seek the same costs and damages as its CERCLA claims. *See also Appleton Papers*, 2012 WL 4748611, at \*3 (citing *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir. 2002) (allowing state law claims where plaintiffs were innocent victims, and not PRPs, such that there was no conflict between the remedies under CERCLA and the common law) and *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1337 (4th Cir. 1993) (allowing state tort claim alleging negligent failure to disclose a defective condition because those damages were completely different than cleanup costs incurred under CERCLA)).

---

[1] The holding in *City of Waukegan*, *i.e.*, that a PRP's state law claims are not preempted where those claims seek to recover costs not otherwise recoverable under CERCLA because not consistent with the NCP, contradicts Seventh Circuit precedent in *PMC, Inc.*, 151 F.3d at 618 ("PMC's invocation of Illinois' contribution statute is an attempt to nullify the sanction that Congress imposed for the kind of CERCLA violation that PMC committed.").

9282771v3

Finally, NSP's argument attempts to minimize the significant obstacles that are presented by the simultaneous assertion of state tort claims and CERCLA claims. (NSP Mem. at 16.) As noted in the Railroads' initial Memorandum, however, "when Congress expressly created a statutory right of contribution in CERCLA § 113(f), it made that remedy a part of an elaborate settlement scheme aimed at the efficient resolution of environmental disputes. Permitting independent common law remedies would create a path around the statutory settlement scheme, raising an obstacle to the intent of Congress." *In re Reading Co.*, 115 F.3d 1111, 1117 (3d Cir. 1997), *abrogated on other grounds*, *E.I. DuPont De Nemours & Co. v. United States*, 460 F.3d 515 (3d Cir. 2006), *vacated*, 551 U.S. 1129 (2007).

Allowing NSP's common law claims to proceed in this case would create just the kinds of obstacles to efficient resolution that Congress intended to avoid and that give rise to CERCLA preemption. While a settlement between the Railroads and EPA would likely give the Railroads contribution protection against claims for CERCLA contribution, providing a significant incentive to resolve these issues, EPA can offer no such protection as to outstanding state law claims. Accordingly, the assertion of state law claims in this case, even in the alternative, would be a substantial impediment to the ability of EPA and the PRPs to reach an overall settlement as to the Ashland Site. In other words, by asserting state common law claims that rely on the same conduct and seek recovery for the same costs and damages as its CERCLA claims, NSP is creating a "path around the statutory settlement scheme" and disrupting the CERCLA settlement framework. This Court should not permit NSP to interfere with CERCLA's objectives,

6

and should dismiss NSP's duplicative Wisconsin common law claims with prejudice.

## II. NSP DOES NOT HAVE A CAUSE OF ACTION UNDER CERCLA § 107.

### A. NSP's Exclusive Remedy Under CERCLA Is A Contribution Action Under CERCLA § 113.

NSP fails to state a claim under CERCLA § 107 because the exclusive remedy for the costs and damages it seeks is a contribution action under CERCLA § 113. Based on traditional principles of tort law cited by the United States Supreme Court in *United States v. Atlantic Research Corp.*, 551 U.S. 128, 138-39 (2007), and contrary to NSP's assertions (*e.g.*, NSP Mem. at 6), the contribution rights under § 113(f) extend to *all* of the costs NSP seeks to recover, not just those to be incurred under the 2012 Consent Decree. As the court in *Appleton Papers* found:

> Any payments made to discharge a common liability in excess of the plaintiff's own fair share are recoverable. [ ]
>
> *. . . This would include not only payments made pursuant to the consent decree . . . but also any other payments they made to discharge their common liability under § 107(a) before or after that time.* Thus, they have no need to resort to § 107(a). Whatever amounts they are entitled to recover must be recovered under § 113(f).

*Appleton Papers*, 572 F. Supp. 2d at 1044 (emphasis added) (citing Dobbs, *The Law of Torts* § 386, 1079 (West 2000)).

NSP's response relies heavily on three cases, *City of Waukegan v. Nat'l Gypsum Co.*, Case No. 07-5008, 2009 WL 4043295 (N.D. Ill. Nov. 20, 2009), *Metropolitan Water Reclamation Dist. Of Greater Chicago v. N. Am. Galvanizing & Coatings, Inc.*, 473 F.3d 824 (7th Cir. 2007), and *United States v. NCR Corp.*, 688 F.3d 833 (7th Cir. 2012), none of which provides direct or indirect support for its argument. *Waukegan* is distinguishable because the costs that the plaintiff sought to recover in that case were not

7

incurred to discharge a common liability, which liability is the basis for a CERCLA § 113(f) claim under *Atlantic Research*. *See* 551 U.S. at 138-39. Here, by contrast, *all* of the recovery NSP seeks would require Defendants to pay a common liability. That is the heart of NSP's pleading, which seeks to require the Railroads to pay their alleged "fair equitable share of the Ashland Facility's response costs and natural resource damages" that NSP has incurred, and will incur in the future, at the Ashland Site. (Compl. ¶¶ 16-17) Moreover, NSP, recognizing that it has no basis for claiming that it is not seeking allocation of an alleged common liability, has merely pleaded that it seeks reimbursement under CERCLA § 107(a) for those costs "that the court does not award under CERCLA § 113(f)." (Compl. ¶ 106.) NSP fails to identify a legal or factual basis for such separate award under any theory, other than §113(f).

Contrary to NSP's argument, *Metropolitan Water* and *NCR* actually support the general proposition that where the necessary predicates to a contribution action under §113(f) have been met, as they have in this case, there is no viable claim under § 107. In *Metropolitan Water*, the Seventh Circuit held merely that a PRP that did *not* satisfy the predicates to bring a contribution action under § 113(f) could bring an action for cost recovery under § 107(a). 473 F.3d at 836. The court noted, however, that:

> Our holding today does not require us to revisit our pre-*Cooper Industries* decision in *Akzo Coatings*, in which we held that a claim 'by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make' must be brought under 113(f)(1).

*Id.* Similarly, in *NCR*, the court recognized that under Supreme Court precedent, claims under CERCLA § 113(f) and § 107(a) "may not *always* be mutually exclusive." 688

9282771v3

F.3d at 844 (emphasis added). Nevertheless, the district court in related proceedings below (in the *Appleton Papers* case) concluded that § 107(a) was unavailable based on the availability of an action under § 113(f), a holding that still stands.

In short, the cases cited by NSP provide no support for its argument that it may simultaneously assert claims under both CERCLA § 113 and § 107. NSP's efforts to gloss over the material differences between this matter and its cited cases are not persuasive.

**B.  NSP's CERCLA § 113 Remedy Includes All Of Its Costs—Whether Incurred Under The 2012 Consent Decree, The 2003 AOC, Or "Voluntarily."**

NSP claims that the Railroads "ignore the scope" of its response costs and argues that all of its costs, other than those to be incurred under the 2012 Consent Decree, are recoverable under § 107(a) as opposed to, or in addition to, § 113(f). (NSP Mem. at 9.) But NSP's parsing of costs is irrelevant. NSP's costs under the 2003 AOC and all of the other costs it has pleaded are recoverable, if at all, under CERCLA § 113(f), not § 107(a).

In addition to being irrelevant, NSP's parsing of costs is simply wrong. The 2003 AOC constitutes an administrative settlement that resolved NSP's liability to the United States for completion of a Remedial Investigation and Feasibility Study ("RI/FS") and for the EPA's associated costs.[2] CERCLA is clear that costs incurred pursuant to an

---

[2] (*See* Compl. ¶ 6; Ex. 2 at ¶ 1 (overview of settlement), ¶ 8 (purpose), ¶ 20 (work to be performed), ¶ 55.a (reimbursement of EPA costs), ¶¶ 58-60 (EPA covenant not to sue, with limited exceptions), and ¶ 77 ("This Order . . . constitute the final, complete and exclusive agreement . . . among the Parties with respect to the settlement embodied in this

9

administrative settlement such as the 2003 AOC are explicitly recoverable under § 113(f):

> A person who has resolved its liability to the United States or a State for *some or all* of a response action or for some or all of the costs of such action in an *administrative* or judicially approved settlement may seek contribution. . . .

CERCLA § 113(f)(3)(B) (emphasis added); *see also Appleton Papers, Inc.*, 572 F. Supp. 2d at 1043.

NSP's attempt to distinguish between costs incurred under the judicially approved 2012 Consent Decree and the administrative settlement with the EPA in the 2003 AOC is contrary to the plain language of the statute. Under CERCLA's plain language in § 113(f)(3)(B), NSP's remedy for costs incurred under the 2003 AOC is a contribution action. *See also Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 604-05 (8th Cir. 2011); *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 126 (2d Cir. 2010); *accord Responsible Envtl. Solutions Alliance v. Waste Mgmt., Inc.*, 493 F. Supp. 2d 1017 (S.D. Ohio 2007) (holding administrative orders on consent to be an administrative settlement for purposes of § 113(f)).

To hold otherwise would lead to precisely the result that CERCLA was intended to prevent. Specifically, if NSP's theory were adopted, it could pursue joint and several liability claims against other PRPs under § 107(a), while enjoying absolute protection from contribution claims seeking equitable apportionment under § 113(f). That result

---

Order.").) NSP incurred costs pursuant to the settlement until 2010, when the EPA issued a notice of completion. (*See* Compl. ¶ 6.).

directly contradicts *Atlantic Research*, in which the Supreme Court stated that the fear that "PRPs will eschew equitable apportionment under § 113(f) in favor of joint and several liability under § 107(a)" is mitigated by the fact that "a § 113(f) counterclaim would necessitate the equitable apportionment of costs among the liable parties, including the PRP that filed the § 107(a) action." 551 U.S. at 138, 40.  Under the 2003 AOC, NSP was granted contribution protection for its costs in connection with the RI/FS, which is the major element in the CERCLA enforcement scheme through which EPA requires a PRP to identify the source and scope of the contamination in question and the appropriate action to remedy that contamination.  400 C.F.R. §§ 300.400(a), 300.430(a)-(b)(1) (2012).  NSP is now seeking to escape—through the contribution protection it received in the 2003 AOC—all liability for such costs, while thrusting that liability on other PRPs. (*See* Compl., Ex. 2 at ¶ 67.)  The express language of § 113(f) precludes this result by allowing a party to seek contribution for its alleged common liability once it has resolved "some or all" of its liability in an administrative or judicially approved settlement.

Faced with this identical situation, numerous courts have held that it is unacceptable to allow liable parties in NSP's position to pursue joint and several liability claims against other PRPs under § 107(a) while enjoying protection themselves from contribution claims under § 113(f).  *See, e.g.*, *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204, 228 (3d Cir. 2010) *cert. denied*, 131 S. Ct. 646 (2010); *BFI Waste Sys. of N. Am., L.L.C. v. City of Belvidere, Ill.*, Case No. 09-C-50061, 2011 WL 9105930 (N.D. Ill. Mar. 15, 2011).

NSP's reliance on *ITT Indus., Inc. v. BorgWarner, Inc.*, 506 F.3d 452, 459 (6th

11

9282771v3

Cir. 2007) and *W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85, 91 (2nd Cir. 2009) for the proposition that its costs incurred under the 2003 AOC are recoverable under CERCLA § 107(a) is also misplaced. In *ITT Industries*, the Sixth Circuit held that when a plaintiff enters an administrative order on consent that does not resolve *any* of its liability to the United States, it must use CERCLA § 107—and not § 113—to recover its costs. 506 F.3d at 459. By contrast, in this case, NSP has resolved its liability for its obligations under the 2003 AOC. (*See* Compl., ¶ 6; Ex. 2, ¶ 58.) Similarly, in *W.R. Grace & Co.*, the Second Circuit found that the consent order resolved liability under state environmental law, but not under CERCLA, and was therefore not cognizable under § 113(f)(3)(B). *See* 559 F.3d at 90-91. Here, by contrast, the 2003 AOC plainly resolves liability under CERCLA. (Compl., ¶ 6; Ex. 2 ¶ 2.)

NSP's attempt to parse various costs in its brief, including investigative costs incurred prior to the 2003 AOC and its interim removal actions, is also unavailing, given the broad scope of the contribution right provided for in CERCLA § 113(f). All of the costs for which NSP seeks recovery under CERCLA § 107(a) are investigative or cleanup costs or natural resource damages with respect to the Ashland Site. NSP has resolved some or all of its liability with the United States and/or the State of Wisconsin with respect to all such costs, making them recoverable under § 113(f). NSP's pleadings allege the very same response costs and damages under its CERCLA § 107(a) claim as under its CERCLA § 113(f) claim, (*compare* Compl. ¶¶ 100, 105 *with* ¶¶ 125, 131; ¶¶ 86, 97, 103 *with* ¶¶ 122, 126-27, 129, 132-33), delineating them only to state that the costs for which it seeks reimbursement under CERCLA § 107(a) are those "that the court

12

9282771v3

does not award under CERCLA § 113(f)." (Compl. ¶¶ 101, 106.) Therefore, all of those costs, for which NSP claims it has "inequitably borne the full burden," (Compl. ¶ 16), are the proper subject of a claim under CERCLA § 113, not § 107.

Finally, NSP contends that some of its costs are recoverable under CERCLA § 107 because they were incurred "voluntarily." However, the voluntary/involuntary distinction has no legal significance in this case. To imagine that a PRP such as NSP—acting in response to written notifications of liability and demands to undertake investigation and cleanup activities from federal and state agencies, with the potential threat of millions of dollars in penalties for not so responding—is acting "voluntarily" defies common sense. Moreover, this voluntary/involuntary distinction has been rejected by courts as a basis for determining which costs are recoverable under § 107. As the court in *Appleton Papers* stated:

> [C]ourts are not interested in analyzing the particular nature of the costs sought . . . but rather focus simply on the PRP's procedural status, specifically, whether it has been 'subject' to an enforcement action."
>
> . . . . Despite the court's use of the terms 'voluntary' and 'involuntary' to distinguish between payments recoverable under § 107(a) and those recoverable under § 113(f), *the operative principle appears to be that § 107(a) is available to recover payments only in cases where § 113(f) is not.*

572 F. Supp. 2d at 1042-43 (emphasis added).

Even accepting NSP's voluntary/involuntary distinction, however, NSP has not alleged a sufficient basis to establish that it incurred any such costs on a voluntary basis. NSP's statement that "prior to 2012, [NSP] was not compelled by judicial or administrative order to incur costs," and that it "'voluntarily' entered into and agreed to comply with the terms of the 2003 AOC," is simply wrong. (NSP Mem. at 12). NSP

13

ignores the larger fact that, upon entering the 2003 AOC, it was obligated under threat of the AOC penalty provisions to incur the costs necessary to complete a RI/FS. Regarding any costs incurred prior to the 2003 AOC, as noted above, such costs were incurred pursuant to the substantial threat of unilateral enforcement by the State of Wisconsin and EPA, making NSP's response activities far from voluntary. (Defs.' Mem. at 21 & n.10) (citing *Appleton Papers*, 572 F. Supp. 2d at 1043 n.8). NSP's costs are not recoverable under § 107(a) on grounds that those costs were incurred voluntarily.

## CONCLUSION

NSP has failed to demonstrate that the costs it seeks are recoverable under any provision other than CERCLA § 113. Accordingly, the Railroads ask the Court to dismiss NSP's common law and § 107 claims in their entirety and with prejudice.

9282771v3

| | |
|---|---|
| Dated: November 21, 2012 | s/ Wendy M. Carlisle |

Gregory A. Fontaine (MN #131908)
*gregory.fontaine@leonard.com*
    *Admitted pro hac vice*
Wendy M. Carlisle (MN #302351)
*wendy.carlisle@leonard.com*
    *Admitted pro hac vice*
Andrew W. Davis (MN #386634)
*andrew.davis@leonard.com*
    *Admitted in the Western District of Wisconsin*
Nathan E. Endrud (MN #389459)
*nathan.endrud@leonard.com*
    *Admitted pro hac vice*
**LEONARD, STREET AND DEINARD**
  Professional Association
150 South Fifth Street, Suite 2300
Minneapolis, MN 55402
Telephone: (612) 335-1500

**ATTORNEYS FOR DEFENDANT SOO LINE RAILROAD COMPANY**

| | |
|---|---|
| Dated: November 21, 2012 | s/David S. Becker |

Robert M. Baratta, Jr. (IL #6271932)
*bbaratta@freebornpeters.com*
    *Admitted in the Western District of Wisconsin*
David S. Becker (IL #6203705)
*dbecker@freebornpeters.com*
    *Admitted in the Western District of Wisconsin*
**FREEBORN & PETERS LLP**
311 S. Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone: (312) 360-6622

**ATTORNEY FOR DEFENDANT WISCONSIN CENTRAL LTD.**

9282771v3