IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NORTHERN STATES POWER
COMPANY, a Wisconsin corporation,

                                        OPINION AND ORDER

             Plaintiff,

                                           12-cv-602-bbc

    v.

THE CITY OF ASHLAND, WISCONSIN;
ASHLAND COUNTY, WISCONSIN;
and L.E. MYERS COMPANY,

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Before the court is plaintiff Northern States Power Company's emergency motion, dkt. #335, to exclude certain supplemental expert reports: (1) Dr. Dennis Helsel's March 5, 2015 report; (2) certain portions of Dr. Alan Jeffrey's Opinion 1 and the entirety of Opinions 2 and 3 from his March 5, 2015 report; and (3) certain of Mr. Guy Patrick's supplemental opinions on phenols from his March 6, 2015 report. Dkt. #335. Also before the court are plaintiff's motion to exclude the certain late-produced documents, dkt. #355, and plaintiff's motions to exclude testimony of the following witnesses: (1) Dr. Emily Greenwald, dkt. #347; (2) Dr. Dennis R. Helsel, dkt. #349; (3) Dr. J. Bushnell Nielsen (certain testimony only), dkt. # 351; and (4) Dr. Guy Patrick (certain testimony only), dkt. #353. Because I find that plaintiff has not shown sufficient reason for exclusion of these reports or the late-produced documents, its motions will be denied.

1

A. Emergency Motion

Plaintiff contends that the supplemental expert reports of Dr. Helsel, Dr. Alan Jeffrey and Guy Patrick should be excluded because they are untimely and include new opinions or analyses to which plaintiff cannot respond, given the immediacy of trial. Defendants City of Ashland and County of Ashland argue that the reports do not contain new opinions but "simply reflect consideration of new evidence and information," Plt's Br., dkt. #429, at 1, that they could not have been expected to produce any sooner than they did. As they point out, plaintiff filed this lawsuit in 2012, but did not undertake the excavation of major areas of the site (Upper Bluff, the filled ravine and Kreher Park) until the summer of 2014. The excavation continued into January 2015. Before then, defendants did not have all of the evidence its experts needed for their reports.

During the summer 2014 excavation, defendants' consultant, The Antea Group, had personnel on site, observing the work, taking samples for testing and taking photographs, among other activities. Antea did all the sampling in the area and was able to observe subsurface gas holders and other structures such as piping, tanks, sewers and other infrastructure.

Starting at the end of December and working until the end of January 2015, plaintiff excavated the filled ravine north of the old manufactured gas plant. Again Antea collected samples, this time from six individual locations in the area of the filled ravine and from the 12-inch clay tile leading from the old plant to the south. In the process, it obtained information not available from any prior testing.

Excavation of the waste tar dump began in July 2014 and continued until the end of January 2015.  Antea was able to inspect the top of the wood waste underlying the waste tar dump, fill soils overlying the dump, piping and other aspects of the dump and document their location and conditions.  After the excavation came to an end in January 2015 and defendants' experts had the sampling results, defendants asked them to prepare the supplemental reports as soon as possible so as to leave time for plaintiff to depose the experts.  Those depositions have since taken place, giving plaintiff an opportunity to cross examine the experts in advance of trial.

Plaintiff cannot complain that Dr. Helsel's report was untimely when defendant city's December 17, 2014 deposition of Dr. Paul Boehm was Helsel's first opportunity to learn of the data Boehm had identified for his CMB analysis.  The deposition did not take place until after Dr. Helsel's original report was due and his deposition had been taken.

It appears that any delay in the production of reports from defendants' experts is attributable to the late start of plaintiff's excavation of large parts of the site and the disclosure of new data from the excavation and that defendants cannot be blamed for the delay in the filing of their experts' reports.  Although it would have been preferable for defendants to have sought leave from the court when they became aware that their reports would be delayed, I will allow the reports because the timing of the excavation was not within defendants' control.

B. <u>Motion to Exclude Certain Documents as Untimely Produced</u>

Plaintiff asks the court to exclude documents (and the testimony related to it) that it says were untimely produced by defendant City. Specifically, plaintiff says that sampling data, photographs, videos and documents related to the excavation were produced on January 22, 2015, February 18, 2015 and March 6, 2015, after the close of discovery on November 26, 2014, and after the parties had reached an agreement with respect to site samples, which the parties were to upload to a shared website on a monthly basis. Under Fed. R. Civ. P. 26, parties must produce "a copy . . . of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses," and failure to produce them means "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The best course of action would have been for defendant City to seek leave from the court if it believed it needed to deviate from the scheduling order or its agreements with plaintiff in order to produce certain discovery. Further, if plaintiff believed it was prejudiced by any late production, it should have raised the issue to the court as soon as possible, not on the eve of trial.

Nevertheless, in this case, defendants City and County make a persuasive argument that the disclosures of sample data, photos and videos were substantially justified or harmless. (Defendant County joined the City in responding to plaintiff's motion.) With

4

respect to the sampling data, excavation occurred during or after the discovery deadline, which provided good cause for defendant City to produce that data after the deadline. Moreover, plaintiff had access to its own split sample at the time each sample was taken, so it was able to conduct its own analysis and was not harmed by defendant City's later reporting of its analysis. This lack of prejudice is also evident from plaintiff's expert's use of defendant City's data in his supplemental report. Dkt. #399. With respect to the photographs from 2001, 2011 and later and the videos of the excavation activities, plaintiff had access to and control over the site during these periods, and plaintiff has not identified any subject of the photographs or videos of which it was not aware. I see no reason why any delay in providing contemporary photographs or video of the Ashland site would prejudice plaintiff, particularly because some of the photographs were timely produced as parts of expert reports or similar productions. Further, defendants have shown that certain late-filed documents were harmless. The "railroad documents" attached to the expert report of Robert Karls were disclosed to plaintiff in August 2014 and articles cited by Guy Patrick in his expert report from August 2014 have been available in the public domain. Plaintiff's motion will be denied with respect to these documents as well as to the sampling data, photographs and videos.

 However, I conclude that with respect to the daily logs, the chance of prejudice is more significant. The logs are not merely photographic representations or physical data from the site but are the interpretations of the site activities, as recorded by defendant City's representatives. Plaintiff could not have anticipated defendants' version of events merely

by retaining control of the site in the same way that plaintiff could have anticipated the contents of photographs and video from the site. Although some of these documents had to be produced late as a result of the timing of the excavation, defendants City and County have not explained why they did not produce the logs on a regular basis from the start of excavation or why there was any delay in their production after excavation ceased. Accordingly, the daily logs will be excluded from the evidence at trial. Any other documents not mentioned in this opinion but included in plaintiff's motion are also excluded for defendants' failure to explain why their late production was substantially justified or harmless.

### C. Motion to Exclude Testimony of Dr. Emily Greenwald

Dr. Greenwald is a trained historian with a Ph.D. and 20 years of experience. In the preparation of her report on the history of the remediation site, she collected or supervised the collection of thousands of pages of historical documents from various repositories, including the National Archives and the Library of Congress, as well as local historical societies, libraries and museums. She collected records from various online archives and data bases and documents provided by plaintiff. She analyzed the relative credibility of witness accounts, relying on her experience and training in taking witness statements and in testing and confirming the recollection of witnesses. She also assessed the methods plaintiff had used in collecting witness statements.

Plaintiff attacks Dr. Greenwald's expertise on three grounds: she is not qualified as

an expert in the areas on which she has given opinions; her opinions will not help the court understand the evidence; and her opinions are needlessly cumulative of other expert opinions. These arguments are not persuasive. A review of Dr. Greenwald's background establishes that she is an expert in the field of history. Plaintiff complains that she is not an expert on the operational practices of manufactured gas plants, which is true but irrelevant. What she is trained to do is to evaluate written documents and oral histories that help explain relevant details about the history of a particular subject, such as the manufactured gas plant and lumber mill at issue in this case.

Plaintiff argues that Greenwald's testimony will not help the court, but it is wrong. Granted, her testimony will not help the court determine the extent or nature of contamination, but my review of her reports shows that her testimony may be helpful on other subjects, such as the historical record of the gas plant and of the other kinds of activities that have taken place on the site. Plaintiff calls her testimony "needlessly cumulative"; if so, that is a problem that can be dealt with at trial.

### D. Motion to Exclude Testimony of Dr. Dennis R. Helsel

Plaintiff contends that Dr. Helsel's opinions are unreliable because they are based on methods Helsel himself has described as "inadequate" and flawed. Helsel analyzed samples taken from various locations at the remediation site and determined whether the sources of the contamination at those locations were likely to be the same or different. The results of his studies conflicted with the conclusion drawn by plaintiff's expert, Dr. Paul Boehm, who

also studied the concentration sources at the site, and who believes that the polycyclic aromatic hydrocarbons in the Kreher Park area were chemically different from those in the Upper Bluff area, where the manufactured gas plant had been operating.

In his work, Boehm eliminated data in which some of the hydrocarbons were not present above the detection limit. Helsel took a different approach: he substituted either a value of zero or the detection limit for such data. Plaintiff contends that Helsel's testimony should be excluded because Helsel himself criticized this approach in his textbook, <u>Statistics for Censored Environmental Data Using Minitab and R</u>. (2d ed. 2012), but plaintiff is wrong. Helsel's opinion is consistent with the methods he has used in previous work.

The analysis at issue is a principal component analysis, which is a statistical method used to compare multiple variables simultaneously; in this instance, the comparison is being made for the purpose of drawing qualitative conclusions about the relationships among multiple chemical components measured within numerous samples at one time. According to Helsel's report, dkt. #412 at ¶ 12, the analysis requires a value for the concentration of every compound in each sample used. Detection limits represent the sensitivity thresholds of the laboratory technology used to measure some characteristic of a sample; below those limits, measurements become unreliable or impossible. In those instances, both Helsel and Boehm used a number to represent the polycyclic aromatic hydrocarbon concentrations below the detection limit. However, Boehm deleted samples from his analysis when five of the 17 compounds being investigated were reported as "non-detect" in the data set, whereas Helsel used the entire data set, including samples with zero concentration and samples with

values below the detection limit. Defendants deny that Helsel criticized this method in his earlier writings; as he explained during his deposition, substitution can yield reliable results under certain circumstances. Helsel Dep., dkt. #331, at 40, ln. 22-41, ln. 4. Moreover, Helsel supplemented his opinions in a report filed on March 3, 2015, and was deposed again by plaintiff on April 8.

In short, I conclude that plaintiff has failed to show that Helsel's methods are unreliable; Helsel will be permitted to testify about the principal component analyses he conducted.

### E. Motion to Exclude Certain Testimony of J. Bushnell Nielsen

Plaintiff wants to exclude J. Bushnell Nielsen from testifying at trial about Wisconsin's public trust doctrine, saying that such testimony is inadmissible under Fed. R. Evid. 702. Defendants deny that they intend to have Nielsen offer any legal opinions or conclusions on the doctrine. Assuming that defendants mean what they say and that they understand that Nielsen may not testify about any legal opinions or about the meaning of any laws, this motion is moot. However, in advance of any testimony from Nielsen, defendants should be prepared to advise the court of the matters about which he intends to testify and his qualifications.

### F. Motion to Exclude Certain Testimony of Guy Patrick

In this motion, plaintiff seeks to limit Guy Patrick's testimony, barring him from

testifying about defendants' potential liability for activities at the site, because Patrick did all his work on behalf of the Soo Line Railroad Company and Wisconsin Central, Ltd., who are no longer involved in the case, and never investigated what defendants did at the site. For this reason, plaintiff says, Patrick should not be permitted to testify on their behalf.

Defendants argue persuasively that plaintiff is wrong when it calls Patrick's testimony irrelevant to a determination of defendants' responsibility for the contamination at the site. Patrick developed a conceptual site model from which he concluded that all of the tar contamination at the site should be allocated to plaintiff. As defendants point out, even if Patrick reached this opinion in determining the railroads' responsibility, it applies to defendants. If plaintiff is shown to be responsible for *all* the contamination, there is nothing left for which defendants can be held responsible. In any event, defendants say that Patrick did take defendants' activities into consideration.

Plaintiff has not shown that Patrick used an improper method for his conceptual site model or that he lacked an adequate factual foundation for his findings. Any other aspects of his report can be challenged through cross examination. Accordingly, I will deny plaintiff's motion to exclude his testimony about the model.

ORDER

IT IS ORDERED that plaintiff Northern States Power Company's emergency motion, dkt. #335, to exclude (1) Dr. Dennis Helsel's March 5, 2015 report; (2) certain of Dr. Alan Jeffrey's Opinion 1 and the entirety of Opinions 2 and 3 from his March 5, 2015 report; and

(3) certain of Mr. Guy Patrick's supplemental opinions on phenols from his March 6, 2015 report, dkt. #353, is DENIED.  FURTHER, IT IS ORDERED that plaintiff's motion to exclude certain documents as untimely produced, dkt. #355, is GRANTED IN PART and DENIED IN PART as set forth in this opinion, and plaintiff's motions to exclude the testimony of the following witnesses: (1) Dr. Emily Greenwald, dkt. #347; (2) Dr. Dennis R. Helsel, dkt. #349; (3) Dr. Guy Patrick (certain testimony only) are DENIED.  Plaintiff's motion to exclude certain testimony of Dr. J. Bushnell Nielsen, dkt. # 351, is DENIED as moot.

      Entered this 15th day of April, 2015.

BY THE COURT:
/s/

_____
BARBARA B. CRABB
District Judge