IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NORTHERN STATES POWER COMPANY,

                OPINION and ORDER

      Plaintiff,

                 12-cv-602-bbc

    v.

THE CITY OF ASHLAND, WISCONSIN;
ASHLAND COUNTY, WISCONSIN;
and L.E. MYERS COMPANY,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

   In this civil action, plaintiff Northern States Power Company is proceeding to a bench trial on claims for contribution under 42 U.S.C. § 9613(f) from defendants City of Ashland, Ashland County and L.E. Myers Company to its remediation of a contaminated site in Ashland, Wisconsin.  Before the court are several motions in limine from both sides.  Dkt. ## 357, 359, 362, 364, 368 and 374.  I will consider each motion in turn.

   A. <u>Plaintiff's Motion to Exclude Expert Testimony of Jamie Dunn</u>

   Plaintiff seeks to exclude the testimony of Jamie Dunn to the extent he testifies as an expert and to the extent he testifies as a representative of the Wisconsin Department of Natural Resources.  Plaintiff expects Dunn to testify about the following topics as an expert:

1

(i) the nature and extent of contamination at the Ashland Site; (ii) the source of the contamination; (iii) the investigations that have been conducted to determine the source of the contamination; (iv) the WDNR's conclusions based on those investigations; (v) the WDNR's conclusions with respect to whether the former dump on the Ashland Site is adding to the cost of the remedy; (vi) the City's cooperation with the WDNR; and, (vii) NSPW's lack of cooperation with the WDNR.

Plt.'s Br., dkt. #363, at 3.

Plaintiff argues that because Dunn has no photography analysis expertise, holds only a bachelor's degree in environmental studies and has never conducted certain laboratory analyses personally, he is unqualified under Fed. R. Civ. P. 702 to testify as an expert on these subjects. In response, defendants City and County say that Dunn is qualified to speak on these matters because he holds a degree in environmental studies and has extensive experience as a hydrogeologist, working on remediation sites like the one in Ashland. Further, they argue, Dunn's testimony will be limited to his investigation of the Ashland site as an employee of the Wisconsin Department of Natural Resources and the department's conclusions as a result of those investigations.

It appears that most of Dunn's testimony will cover topics that are matters of factual testimony, so Dunn's qualifications as an expert are irrelevant on those matters. In particular, Dunn may explain his personal knowledge about plaintiff's and defendants' cooperation with the Department of Natural Resources and what he personally found and concluded about the contamination of the site and the sources of that contamination during his investigations for the department. To the extent Dunn does offer an expert opinion, his environmental studies degree with a concentration in hydrogeology and his twenty-five-plus years of experience as a hydrogeologist with the Department of Natural Resources are

sufficient to qualify him to speak on subjects related to the Ashland site's contamination and contaminant sources and how the site's remediation activities may be affected by various sources and contaminants.

Plaintiff is concerned in particular about Dunn's potential testimony on whether wood treatment occurred on the Ashland site. Defendants argue that Dunn will explain how he investigated and concluded that there was no reliable evidence of wood treatment. He is free to do this as a fact witness. To the extent his testimony relates to sources of contamination, such as wood treatment, he is qualified to provide an expert opinion.

I agree that Dunn is not qualified to testify as an expert on photographic analysis, but he is free to explain why he concluded that photographs did or did not provide evidence of contamination during his investigation of the Ashland site. Moreover, he need not be an expert on the wood treatment industry to explain what he found in the soils at the Ashland site and why he concluded that wood treatment was or was not a source of contamination. As with any witness, if Dunn's testimony goes into areas not subject to his expertise or his knowledge as a fact witness, plaintiff may object.

Plaintiff also argues that Dunn cannot represent the Wisconsin Department of Natural Resources's "official position" on various aspects of the Ashland site because defendants did not make the department available for a deposition under Fed. Civ. P. 30(b)(6), which provides a mechanism for naming an entire organization as a candidate for deposition and allowing the organization to send a representative. Plaintiff cites Bailey v. Viacom Inc., 435 F. App'x 85, 91 (3d Cir. 2011) for the proposition that Fed. R. Civ. P.

30(b)(6) requires a witness testifying in a representative capacity to have been named by the organization under the rule.  <u>Bailey</u> held that the fact testimony of a witness whose experience extended to only two instances and who was not designated under Fed. R. Civ. P. 30(b)(6) was not proof of a company-wide policy.

In this case, Dunn is the project manager for the Department of Natural Resources at the Ashland site, not someone merely involved in one or two parts of the remediation effort.  Moreover, Fed. R. Civ. P. 30(b)(6) provides a mechanism for finding information known to an organization; it does not prohibit employees from testifying about their own activities or their personal knowledge related to the organization.  <u>Id.</u> ("This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.").  As an employee working on the Ashland site, Dunn may testify as a representative of the Wisconsin Department of Natural Resources, but, as with any fact witness, defendants must show that there is foundation for his testimony, such as his personal involvement in the investigations and decisions of the Department of Natural Resources.  Fed. R. Evid. 602; <u>Kaczmarek v. Allied Chemical Corp.</u>, 836 F.2d 1055, 1061 (7th Cir. 1987) (head of company's transportation department permitted to testify about what meetings were held in department because such knowledge was within his personal knowledge); <u>Rosemann v. Roto-Die, Inc.</u>, 377 F.3d 897, 903 (8th Cir. 2004) (company president and attorney may testify as to their understanding of contract term in contract entered into by company).

Finally, plaintiff argues in a footnote that Dunn should not testify as a representative of the Environmental Protection Agency.  It is not necessary to address this argument; courts

4

may ignore undeveloped arguments raised only in a footnote.  Gross v. Town of Cicero, Illinois, 619 F.3d 697, 704 (7th Cir. 2010) (undeveloped argument raised only in footnote waived).  In any event, Dunn is not a representative of the Environmental Protection Agency, but he may testify about his *personal* knowledge of the agency's investigations that he gained from working with the agency on the Ashland site.


B.  Defendant L.E. Myers's Motion to Exclude Certain Testimony of Kurt Herman

Plaintiff's expert Kurt Herman is trained in engineering and geology and works in environmental risk assessment.  Defendant L.E. Myers contends that certain testimony from Herman is inadmissible for two reasons.  First, Herman cannot offer the opinion that L.E. Myers controlled Ashland Light because Herman is unqualified to make that determination and because the conclusion is irrelevant, unhelpful and unreliable.  As an environmental engineer and geologist, Herman is not qualified to offer an opinion on corporate control, but plaintiff argues that Herman is not offering such an opinion.  Instead, plaintiff says that Herman provides an opinion on L.E. Myers's contribution to the site's contamination, in the event that plaintiff establishes corporate control between L.E. Myers and Ashland Light.  Although Herman writes in his report about the evidence bearing on L.E. Myers's control of Ashland Light, I will take plaintiff at its word and consider Herman's opinion only with respect to his contribution analyses.

Although Herman's opinion cannot be relied upon for the court's determination of the question of corporate control, the opinion may serve as a basis for determining L.E.

5

Myers's contribution to contamination, assuming that a sufficient corporate nexus is found. Moreover, as an expert, Herman may base his opinion on disputed facts so long as those facts are not mere speculation. Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000) ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact . . . ."); Fed. R. Evid. 702, Advisory Comm. Note 2000 Amend. ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the [Rule] on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other."). Defendant is free to attack Herman's testimony on cross examination with respect to whether Herman relied on insufficient or incorrect evidence, to the extent those matters are relevant to his opinions on contamination contribution.

Second, defendant L.E. Myers wants to keep Herman from testifying that L.E. Myers's construction of a coal gas plant caused contamination. Herman is an engineer with years of experience working on environmental matters related to gas plants. It is well within his area of expertise to testify that construction would have involved subsurface work that had some likelihood of disturbing pollutants and causing increased contamination. Further, defendant L.E. Myers has not shown that Herman's opinion is based entirely on speculation or guesswork. Smith, 215 F.3d at 719. To the extent that L.E. Myers believes that his opinions are unsupported by the evidence, it is free to cross examine him.

6

C.  Defendant City and Defendant County's Motion to Exclude Testimony of William
Hengemihle

Defendants City and County seek to exclude the testimony of William Hengemihle on the ground that they are not supported by a reliable scientific analysis and his testimony would not assist the court in determining an issue of fact.  Hengemihle is plaintiff's "allocation" expert, who developed an "allocation model for response costs incurred and to be incurred by [plaintiff]."  Dkt. #235, exh. #1, at 5.  Defendants argue that Hengemihle's methods have two fatal flaws:  (1) he does not quantify defendants' contribution to the site's response costs and (2) he identifies eight cost categories but then applies them differently to the ultimate allocation.  With respect to the first problem identified by defendants, Hengemihle need not quantify defendants' contribution to response costs; allocation models may include qualitative analyses.  Cf. Environmental Transportation Systems, Inc. v. ENSCO, Inc., 969 F.2d 503, 506 (7th Cir. 1992) (considering relative culpability of parties rather than strict quantity analysis).  With respect to the second problem, defendants have not identified any way in which Hengemihle's methods are unreliable.  He may apply different methods to different cost types or areas, so long as he has a reasonable basis for making those distinctions.  Defendants do not argue that Hengemihle's reasons for treating cost categories differently are unsound; they simply contend that the methods are different. That is insufficient reason to exclude expert testimony.

Next, defendants next take issue with Hengemihle's reliance on other experts' conclusions.  It is well established that experts may rely on other experts' opinions in

formulating their own. Walker v. Soo Line R.R., 208 F.3d 581, 586 (7th Cir. 2000). Moreover, this sort of reliance is precisely the point of Hengemihle's testimony: he provides a proposed method for allocation based on other experts' data and on information related to the parties' contribution to contamination, their ownership stakes in the property and other factors.

Defendants argue that Hengemihle's methods are not scientifically rigorous and should be excluded under Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharmaceuticals Inc., 509 U.S. 579 (1993). They argue that his allocation model has not been tested, subjected to an error rate analysis, generally used or accepted or subjected to peer review (although he says that his general methods have been subject to "a great deal of literature," Hengemihle Dep., dkt. #133, at 23). The traditional Daubert guideposts listed by defendants are generally inapplicable in this case because Hengemihle is not providing a scientific analysis of the Ashland soils or quantifying the amount of contamination at the site. Rather, he is providing a model from which to analyze both qualitative and quantitative information from other experts so as to allocate response costs among the parties. The model is not testable in the traditional sense nor is it a purely scientific or mathematical formula, but that does not make it unreliable. Raytheon Aircraft Co. v. United States, 2008 U.S. Dist. LEXIS 17201, 22 (D. Kan. Mar. 4, 2008) (holding expert opinion on allocation under § 9613(f) reliable even though it was not "tested, published or subject to peer review" because those guideposts did not apply to "unique issues of causation" in environmental contamination case in which there was "absence of direct quantitative evidence").

8

Defendants argue that Hengemihle's testimony should be excluded because his opinion "invades the court's discretion" in deciding the equitable allocation of costs under 42 U.S.C. § 9613(f).  Dfts.' Br., dkt. #372, at 15.  It is true that experts may not simply explain the law or how to apply the law.  Good Shepherd Manor Foundation, Inc. v. City of Momence, 323 F.3d 557, 564 (7th Cir. 2003) (excluding "testimony [that] was largely on purely legal matters and made up solely of legal conclusions").  It is also true that the equitable allocation in a contribution action under CERCLA is within the discretion of the court.  42 U.S.C. § 9613(f); NCR Corp. v. George A. Whiting Paper Co., 768 F.3d 682, 695 (7th Cir. 2014).

I agree that Hengemihle's opinions may be excluded to the extent they recite or explain the law.  However, qualified experts may offer opinions on *how* to apply qualitative and quantitative data to determine the ultimate decisions in the case, as Hengemihle has done by offering a model for allocation.  Cf. Miksis v. Howard, 106 F.3d 754, 762 (7th Cir. 1997) (holding that expert's testimony on "primary" cause of accident was permissible under Fed. R. Evid. 702 and 704).  Courts routinely admit the testimony of allocation experts in CERCLA contribution cases and are free to ignore or use that testimony to the extent it assists them in deciding how to allocate costs.  E.g., Goodrich Corp. v. Town of Middlebury, 311 F.3d 154, 162 (2d Cir. 2002) ("Additionally, the LPC and BHC each presented allocation experts who submitted *recommended allocation formulas* for the court to apply in assessing contribution shares.") (emphasis added).  Therefore, I will consider Hengemihle's testimony to the extent that he provides a model for assessing the data and allocating

responsibility; I will not consider his recitation or explanation of the law.

D. Defendant City and Defendant County's Motion to Exclude Testimony of Paul D. Boehm

Defendants City and County seek to exclude the expert testimony of Paul D. Boehm because they say his work is unreliable under Fed. R. Evid. 702 and Daubert, 509 U.S. 579. Boehm is an expert in forensic and environmental chemistry. In this case, he analyzed soil samples from the Ashland site to determine the relative concentrations of the polycyclic aromatic hydrocarbons from different areas and whether the samples are chemically distinct. Defendants have many criticisms of Boehm's methods, but most of them boil down to complaints that Boehm categorized samples on the basis of where they were taken rather than making an effort to determine their original location. Defendants also argue that his results can be attributed to inter-laboratory differences; he used a comparison ratio method not used by others in his field; he adopted an analysis completed by someone else; and he lacks competent expertise on the subject matter of principal component analysis.

It appears that defendants' theory for the polycyclic aromatic hydrocarbon contamination of Kreher Park is that those hydrocarbons flowed from the gas plant area to the park area. In various ways throughout their motion, defendants fault Boehm for failing to give proper consideration to this theory in his analysis and for failing to analyze the samples by hypothetical source locations rather than by sample locations. Defendants are free to attack Boehm's conclusions on this basis, but they have not shown that his opinion

is unscientific or unsound under Fed. R. Evid. 702.  It was not necessary for him to have analyzed the samples by hypothetical source locations because his analysis considered the chemical properties of soils and contaminants as they are found now in order to determine the possibility of different sources on the basis of *chemical* distinction, rather than on a purely geological assessment.

Defendants argue that the sampling results may be grouped by the various laboratories that analyzed them over the course of ten years and that the differences Boehm identifies as chemical distinctions may be attributed to differences among the laboratories. If defendants' contention is correct, it raises serious questions about the veracity of Boehm's conclusions.  Nevertheless, Boehm's failure to account for these differences is not evidence that he failed to rely upon scientific principles or reliable methods.  Southwire Co. v. J.P. Morgan Chase & Co., 528 F. Supp. 2d 908, 929 (W.D. Wis. 2007) ("Although some regression analyses may be so incomplete as to be inadmissible, in most cases, 'failure to include variables will affect the analysis' probativeness, not its admissibility.'") (quoting Bazemore v. Friday, 478 U.S. 385, 400 (1986)).

Defendants next take issue with Boehm's methods with respect to the "BbF/BkF" ratio.  Defendants say the FL/PY ratio is the standard ratio used in much of the scientific literature; plaintiff contends that the BbF/BkF ratio is also well established in the literature. Defendants also complain that Boehm should have used additional comparison ratios in order to have a more robust analysis, but plaintiff contends that Boehm's method has support in the literature.  Similarly, defendants say Boehm did not conduct a "rate of error"

11

analysis, but he contends that his methods considered uncertainty. Although neither side's briefs provide much clarity on these arguments, I conclude that defendants have not shown that Boehm's analysis was unreliable in any of these respects.

Finally, defendants seek to exclude Boehm's principal component analysis because it is a qualitative tool, without explaining why this means that it lacks a scientific basis or is unreliable. Further, defendants seek to exclude the analysis because it was completed by someone else and Boehm provided incomplete or hesitant answers to certain questions on how the analysis was completed. Review of the deposition testimony cited by defendants for this proposition reveals that Boehm provided answers but said that he wished to consult with the people who conducted the analysis. Experts are free to advance others' work in their expert opinions so long as they are competent in that area of expertise as well, Dura Auto System of Indiana, Inc. v. CTS Corp., 285 F.3d 609, 612-13 (7th Cir. 2002), and defendants have not shown that Boehm lacks competence in this area. Particularly because this is a bench trial, I will permit Boehm to testify on this analysis. If cross examination reveals that Boehm cannot adequately explain the basis or methods of the principal component analysis, I will not consider his testimony on that subject.

Because defendants have not shown that Boehm's testimony should be excluded on the basis that he adopted methods that lack rigor in forensic chemistry, their motion will be denied.

12

E.  <u>Defendant County's Motion to Exclude the Testimony of Deceased Ashland</u>

<u>Residents</u>

Defendant County seeks to exclude the "preservation depositions" of four now-deceased Ashland residents.  Defendant County contends that the depositions are hearsay because these witnesses are unavailable to testify at trial and the Federal Rules of Civil Procedure do not provide an exception that would allow their testimony.

With respect to Fed. R. Civ. P. 804(b)(1), former testimony is admissible if (1) the witness is unavailable; (2) the testimony was given "as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one"; and (3) the testimony "is now offered against a party who had—or, in a civil case, whose predecessor in interest had--an opportunity and similar motive to develop it by direct, cross-, or redirect examination."  Under Fed. R. Civ. P. 27(a)(4), "a deposition to perpetuate testimony may be used under Rule 32(a) in any later-filed district court action involving the same subject matter if the deposition either was taken under these rules or, although not so taken, would be admissible in evidence in the courts of the state where it was taken."

Because the depositions were taken in Wisconsin, Wisconsin law applies for the purposes of Fed. R. Civ. P. 27(a)(4).  Wis. Stat. § 804.02(1)(d) provides that "[i]f a deposition to perpetuate testimony is taken under this section . . . it may be used in any action involving the same subject matter subsequently brought in this state in accordance with s. 804.07."  Wis. Stat. § 804.07 and Fed. R. Evid. 804(b) appear to permit use of a deposition under a similar standard.  Under Wis. Stat. § 804.07(1), a deposition "may be

used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof" or in "another action involving the same subject matter is afterward brought between the same parties or their representatives or successors in interest," Wis. Stat. § 804.07(1)(e).

The parties agree that the witnesses are unavailable, defendant County was not present at the depositions and it was not given notice of the deposition. Thus the question is whether a party was present who is "predecessor in interest" and who had "an opportunity and similar motive to develop [the deposition testimony] by direct, cross-, or redirect examination," Fed. R. Evid. 804(b)(1), or whether a party was present for whom defendant County may be considered a "representative[] or successor[] in interest." Wis. Stat. § 804.07(1)(e).

Plaintiff argues that defendant County's interests were represented by the Wisconsin Department of Natural Resources, which was represented at the depositions and whose interests aligned with defendant County with respect to whether wood treatment occurred on the Ashland site. Without explanation, plaintiff cites Wis. Stat. § 292.31 for the proposition that "WDNR had a strong motive to challenge testimony that Schroeder Lumber treated wood because, under Wisconsin law, WDNR can be responsible for funding cleanup of orphaned sites." Plt.'s Br., dkt. #432, at 3. Section 292.31 provides authority for the Department of Natural Resources to pay for certain response costs, §§ 292.31(4), (6), (8) but recovery of response costs is available only from "persons responsible." This hardly means the agency's interests are aligned with a potentially responsible party such as

14

defendant County.

At the time the depositions were taken, the Wisconsin Department of Natural Resources was the regulatory body charged with investigating and potentially remediating the site.  It would have wanted to develop evidence related to all potential contamination sources and "persons responsible"; defendant County would wish to counter all evidence related to the potential contamination by wood treatment.  The Wisconsin Department of Justice attorney at the depositions asked some questions about wood treatment, but that questioning alone does not establish that the state's interests were aligned with those of defendant County.  Moreover, defendant County's reliance on Jamie Dunn's testimony is not evidence that his employer's interests align with defendant County, especially considering that the case has now evolved from state-regulated to federal-regulated, meaning that the role of the state has shifted significantly.  Accordingly, I conclude that the depositions may not be used against defendant County.

Defendant County also asks the court to exclude all expert testimony that relies on these depositions; that issue is discussed later in this opinion with respect to defendant City's motion to exclude expert testimony relying on the residents' statements, which defendant County joins.


F.  Defendant City's Motion to Exclude Certain Hearsay Statements

Defendant City seeks to exclude the deceased Ashland residents' depositions, as well as the affidavits attached to the depositions and the interview reports related to the

depositions.  With respect to the depositions, defendant City says that it never received proper notice, so the depositions do not meet the exceptions for admissibility under Fed. R. Evid. 804(b)(1) and Wis. Stat. § 804.07(1)(e).  Specifically, defendant City argues that it was not served with notice of the hearing on the preservation depositions "[a]t least 20 days before the date of hearing," as required under Wis. Stat. § 804.02(1).  It is true that plaintiff did not serve defendant City until August 28, 2001, 17 days before the hearing on September 14, 2001.  Defendant City does not dispute that it was served with the notice, and, although it says it has no records confirming receipt, it does not dispute that plaintiff sent three more letters to defendant City about the depositions.

The depositions occurred on October 16, 2001.  Defendant City did not attend them.  Now, it argues that because the notice for the hearing was three days late under state law, the depositions cannot be used against it.  Nothing in Wis. Stat. §§ 804.02 and 804.07 requires that late notice necessarily proscribes use of the depositions.  Indeed, Wis. Stat. § 804.07(1) provides only that the notice be "reasonable."  (Fed. R. Civ. P. 27(a)(2) requires 21 days' notice, but permits that the deposition may be used if it "would be admissible in evidence in the courts of the state where it was taken.").  I conclude that defendant City had reasonable notice and opportunity to attend the depositions under Wis. Stat. § 804.07(1); Fed. R. Civ. P. 27(a)(4); and Fed. R. Evid. 804(b)(1) and the depositions are admissible against it.

With respect to the interview reports and affidavits, defendant City says, without explanation, "There is no hearsay exception that applies to the statements or affidavits.

16

Accordingly, they are inadmissible." Dft.'s Br., dkt. #375, at 4.  For its part, plaintiff says, in a footnote and without authority or elaboration, that the witnesses confirmed the affidavits and were subject to cross examination on their contents, so they should be admissible for the same reason as the depositions.  Plt.'s Br., dkt. #410, at 15 n.8.  Plaintiff argues that the interview reports are admissible as ancient records under Fed. R. Evid. 803(16).  However, Fed. R. Evid. 805 provides that "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."  Thus, "if the [ancient] document contains more than one level of hearsay, an appropriate exception must be found for each level."  United States v. Bronislaw Hajda, 135 F.3d 439, 444 (7th Cir. 1998).  Plaintiff has not identified a hearsay exception for the parts of the interview reports that contain statements made by the witnesses.

Because plaintiff's arguments on the affidavits and interview reports raise issues for which a reply from defendant City would be helpful, I will wait to address these issues as they arise at trial.

Finally, plaintiff argues that the Wisconsin Department of Natural Resources reports and affidavits related to these witnesses are admissible as public records.  Because defendant City has not said it wishes to exclude this evidence, I have not considered this argument.


G.  Defendant City and Defendant County's Motion to Preclude Plaintiff's Experts from Relying on Statements from Deceased Ashland Residents

Defendants City and County seek to prevent plaintiff's experts from relying on

statements by now-deceased Ashland residents that wood treating activities occurred on the Ashland site.  Defendants acknowledge that plaintiff's experts may rely on inadmissible evidence in developing their opinions, but they say that the statements from the Ashland residents are so unreliable that they cannot serve as a permissible factual basis for any purpose.  I note that although defendants say that they are seeking to exclude all expert testimony relying on these statements, they discuss expert witness Walter Shields for most of their brief.  Nevertheless, my conclusion is the same for all experts.

Although the Ashland residents are not always consistent in their own statements or with each other, that is true for almost any eyewitness testimony.  The witness testimony and statements are sufficiently reliable to be considered by the experts and any inconsistencies are fodder for cross examination.  Stollings v. Ryobi Technologies, Inc., 725 F.3d 753, 767 (7th Cir. 2013) (possibly inaccurate data inputs go to weight of expert testimony); Manpower, Inc. v. Insurance Co. of Pennsylvania, 732 F.3d 796, 807 (7th Cir. 2013) ("The reliability of data and assumptions used in applying a methodology is tested by the adversarial process and determined by the jury; the court's role is generally limited to assessing the reliability of the methodology—the framework—of the expert's analysis.").  Moreover, for his part, when he formed his expert opinion on wood treatment at the Ashland site, Shields relied on multiple pieces of evidence, including historical photographs and site contamination data.

Defendants City and County also say Shields chose which statements to find credible and that plaintiff presented him with a biased view of the evidence.  Neither argument is

18

persuasive in this instance.  These arguments matter only if Shields lacked an analytically sound basis to consider the "biased" evidence or to determine which evidence to favor. Smith, 215 F.3d at 719.  I have already concluded that it was permissible for experts to consider the witness statements, and, although the fact finder alone is responsible for ultimately determining witness credibility, Goodwin v. MTD Products, Inc., 232 F.3d 600, 609 (7th Cir. 2000), experts are permitted to make reasoned choices about what evidence they consider.  Defendants may challenge Shields's choices on cross examination.

Plaintiff's withholding of attorney work product from its experts' consideration is not grounds for exclusion.  An expert's reliance on information that may have bias is not a ground on which to exclude the expert but rather goes to the weight of his testimony. Manpower, Inc., 732 F.3d at 808 (testimony need not be excluded even if all expert's data supplied by counsel on one side, so "reliability of the data itself is not the object of the Daubert inquiry").  Defendants cite Sommerfield v. City of Chicago, 254 F.R.D. 317, 321 (N.D. Ill. 2008) for the proposition that an expert's reliance on biased facts may be a reason to exclude the testimony.  However, that case is easily distinguishable from this one.  In Sommerfield, the lawyers supplied summaries of depositions that were less than 1% of the length of the depositions themselves; other depositions were not summarized or considered at all.  The court excluded the expert's testimony because he relied only on the lawyer's extremely abbreviated interpretation of the facts and none of the actual evidence.  In this case, the experts reviewed actual witness statements, not summaries prepared by counsel.

Defendants also argue that those in Shields's field would not rely on such evidence

19

to formulate their expert opinions but they fail to provide any basis for this conclusion. Accordingly, the experts will not be precluded from relying on the deceased witnesses' statements.

### H.  Plaintiff's Motion to Exclude Cumulative Expert Testimony

Plaintiff seeks to exclude what it calls "cumulative" expert testimony on behalf of defendants City and County.  Given the short time defendants City and County have to present their case at trial, it is in defendants' interest to avoid needlessly cumulative testimony.  However, I will not tell defendants what testimony to introduce or exclude. Should it become a problem at trial, plaintiff may renew its objection.

### I.  Plaintiff's Motion to Exclude Certain Evidence

Plaintiff seeks to exclude references to the finances of its parent company (Xcel Energy) as irrelevant and prejudicial and it seeks to exclude references to its assertion of attorney-client privilege with respect to interview notes and other documents as improper. Plaintiff argues that Xcel's finances are irrelevant because defendants have not argued that Xcel may be liable for the Ashland response costs.  In response, defendants say only that Xcel's Securities and Exchange Commission's disclosures say that it may be required to pay for environmental contamination by its subsidiaries.  Xcel's general disclosure is insufficient to show relevance to this case.  Unless defendants intend to argue that Xcel may be liable for the *Ashland* clean up, its finances are immaterial.

Next, it is true that negative inferences should not be drawn from the assertion of privilege.  Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208, 225 (2d Cir. 1999) abrogated on other grounds by Moseley v. V Secret Catalogue, Inc., 537 U.S. 418 (2003); Parker v. Prudential Insurance Co. of America, 900 F.2d 772, 775 (4th Cir. 1990).  However, because this is a bench trial, the danger of *unfair* prejudice under Fed. R. Evid. 403 is diminished.  Defendants are free to argue that plaintiff *abused* its assertions of privilege to avoid cooperation with regulatory bodies, but a valid assertion of privilege is not evidence of lack of cooperation.  In addition, defendants are free to present evidence that plaintiff provided a limited universe of facts, data and other evidence to experts or other witnesses as a result of plaintiff's assertion of privilege, but that does not compel an inference that the privileged material contained evidence harmful to plaintiff's case.  Unless defendants show that plaintiff's assertions of privilege were invalid, a negative inference is improper.

## ORDER

IT IS ORDERED that

1.   Plaintiff Northern States Power Company's motion to exclude the expert testimony of Jamie Dunn, dkt. #362, is DENIED.

2.  Defendant L.E. Myers's motion to exclude certain testimony of Kurt Herman, dkt. #368, is DENIED.

3.   Defendants City of Ashland and Ashland County's motion to exclude the testimony of William Hengemihle, dkt. #357, is GRANTED with respect to his testimony

21

reciting or explaining the law and DENIED in all other respects.

4. Defendants City and County's motion to exclude the testimony of Paul D. Boehm, dkt. #357, is DENIED.

5. Defendant County's motion to exclude the testimony of deceased Ashland residents, dkt. #374, is GRANTED with respect to the depositions and DENIED with respect to the expert testimony relying on the depositions.

6. Defendant City's motion to exclude certain hearsay statements, dkt. #357, is DENIED with respect to the depositions and STAYED with respect to the affidavits and interview reports.

7. Defendants City and County's motion to preclude expert witnesses from testifying about or relying on statements from deceased witnesses, dkt. #357, is DENIED.

8. Plaintiff's motion to exclude cumulative expert testimony, dkt. #359, is DENIED.

9. Plaintiff's motion to exclude certain evidence, dkt. #364, is GRANTED in part and DENIED in part, as set forth in this opinion.

Entered this 16th day of April, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge